# EXHIBIT 2

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| M.M.M., on behalf of his minor child, J.M.A., *et al.*,<br><br>**Plaintiffs,**<br><br>v.<br><br>Jefferson Beauregard Sessions, III, Attorney General of the United States, *et al.*,<br><br>**Defendants.** | CIVIL ACTION NO. _____<br><br>**DECLARATION OF I.A.T. IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMNARY INJUNCTION** |

Yo, ▮▮▮▮▮▮▮▮▮▮▮▮ declaro y afirmo conforme a 28 U.S.C. § 1746:

1. Escribo esta declaración en nombre de mi hijo, ▮▮▮▮▮▮▮▮▮ que tiene seis años. Mi lengua materna es el español. Los hechos en esta declaración jurada se basan en mi propio conocimiento personal, y podría y debería testificar de manera competente sobre los asuntos contenidos en este documento si se me solicitara hacerlo. Presento esta declaración jurada en apoyo de la Moción de los Demandantes por Orden de Restricción Temporal e Injunction Preliminar.

2. Mi hijo y yo nos fuimos de Honduras juntos porque mi amigo y yo habíamos sido amenazados anteriormente por miembros de pandillas. Fuimos a la policía en busca de ayuda, y en lugar de ayudar, nos arrestaron. La policía me extorsionó y me dijo que solo me liberarían si les pagaba dinero, yo lo hice. Unos meses después, la pandilla mató a mi amigo. Mi hijo y yo fuimos detenidos por agentes de inmigración de los Estados Unidos alrededor de McAllen, Texas, alrededor del 12 de junio de 2018.

3. ▮▮▮ y yo fuimos separados el 13 de junio de 2018 y eventualmente me enteré de que el estaba detenido en BCFS cerca de Harlingen, Texas. Mientras estaba en la custodia de la Patrulla Fronteriza, me esposaron por primera vez en mi vida y me dijeron que iba a ir a juicio, y que mi hijo debería quedarse donde estaba. Dijeron que el todavía estaría allí cuando volviera de la corte. Pero después de la corte, ▮▮▮ no estaba. Estaba frenético y les pregunté a los oficiales dónde estaba mi hijo, pero lo único que dijeron fue que no tenían esa información. Realmente no

tuve la oportunidad de hablar con él y luego simplemente ya no estaba. No sabía nada sobre a dónde lo llevaron o qué le iba a pasar. Lo mismo le sucedió a muchos otros padres.

4. Estuvimos separados por aproximadamente 33 días. No tuve contacto con mi hijo hasta aproximadamente 9-10 días después de que nos separaron. Fue una llamada telefónica. Me dijeron que podía hablar por 10 minutos. Cuando comencé a hablar con ▇, él simplemente comenzó a llorar incontrolablemente. Seguí tratando de calmarlo, pero fue muy doloroso para mí escucharlo y no poder hacer otra cosa más que hablar. Quería abrazarlo o consolarlo pero no pude. Comencé a llorar también, y luego le dije al guardia que detuviera la llamada temprano. No podía soportarlo, y no quería que ▇ passara por eso más tiempo. Todavía no tenía idea si alguna vez volvería a verlo.

5. Finalmente, el 16 de julio de 2018, ▇ y yo nos reunimos. Ese fue un día increíble. Él me vio y los dos empezamos a llorar y nos dimos un gran abrazo. Desde entonces hemos sido detenidos en el Centro Residencial del Condado de Karnes y ▇ casi no se ha ido de mi lado.

6. Tengo miedo de ser separado de mi hijo de nuevo.

7. ▇ y yo tenemos miedo de regresar a Honduras porque las pandillas son prevalentes y me han atacado antes, y han matado a mis amigos. Me preocupa que ▇ crezca allí porque las pandillas comienzan a reclutar niños a edades tempranas, y aunque solo tiene 6 años, creo que comenzarán a reclutarlo muy pronto. También soy políticamente activo y el partido nacional me amenazó recientemente por no apoyarlos. Me preocupa lo que nos pueda pasar si nos vemos obligados a regresar a Honduras.

8. Me gustaría quedarme en los Estados Unidos donde ▓ y yo podamos estar seguros.

9. Cuando ▓ y yo nos reunimos, me dieron varios documentos para mi hijo. Casi todo está en inglés, así que no sé lo que dice, pero mis abogados en Karnes dicen que ▓ recibió un Aviso de Comparecencia el 15 de junio de 2018. Hasta donde sé, nunca tuvo una audiencia en la corte y nunca visto un juez. No sé qué está pasando con su proceso de deportación.

10. Desde que llegó a Karnes, ▓ no ha tenido la oportunidad de explicar su temor de regresar a Honduras a los oficiales de inmigración o asilo. Le pedimos a nuestros abogados que nos ayudaran a solicitar una entrevista de miedo creíble para ▓, lo cual hicieron, pero él todavía no tiene una entrevista programada. Mi abogado lo investigó y me dijo que ▓ no tendrá una entrevista.

11. Tuve una entrevista de miedo creíble antes de llegar a Karnes, pero ▓ no fue parte de eso. No pude consultar con ▓ antes de la entrevista, y obtuve un resultado negativo. El 13 de junio de 2018 recibí una orden de deportación acelerada. Durante la entrevista de miedo creíble, no me podía concentrar en contestar las preguntas que me hacía el oficial de inmigración porque estaba preocupado sobre mi hijo. No sabia donde estaba, y solo podía pensar en el. También, no conocía nada sobre el proceso de miedo creíble, ni entendía los requisitos de asilo. No sabía qué información debía de compartir acerca de mis experiencias en Honduras. Cuando firme el documento indicando que quería ser devuelto a mi país con mi hijo si fuese ordenado deportado, elegía esa opción porque la Señora que me presentó el documento para ser firmado me dijo que si firmaba en ese lugar, me reuniría con mi hijo ese mismo dia. Mi nivel de

entendimiento al leer es muy bajo, y me cuesta mucho trabajo leer y comprender, aunque las palabras sean escritas en Español.

12. ███ no tiene su propia orden de deportación acelerada que yo sepa, y su nombre no está en la orden que tengo.

13. Hablé con el Consulado de Honduras el jueves pasado. Me dijeron que ███ y yo seremos deportados pronto.


Declaro bajo pena de perjurio bajo las leyes de los Estados Unidos de América que lo anterior es verdadero y correcto.

Executado en este 26 de julio del 2018, en Karnes City, Texas

████████████████

████████████████

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| M.M.M., on behalf of his minor child, J.M.A., *et al.*,<br><br>**Plaintiffs,**<br><br>v.<br><br>Jefferson Beauregard Sessions, III, Attorney General of the United States, *et al.*,<br><br>**Defendants.** | **CIVIL ACTION NO. _____**<br><br>**DECLARATION OF I.A.T. IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMNARY INJUNCTION** |

I, ███████████████████████, declare and state pursuant to 28 U.S.C. § 1746:

1.  I write this statement on behalf of my son, ███████████████████████, who is six-years-old. My native language is Spanish. The facts in this declaration are based on my own personal knowledge, and I could and should competently testify to the matters contained herein if called upon to do so. I submit this sworn declaration in support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

2.  My son and I left Honduras together because my friend and I were threatened by gang members. We went to the police for help, but instead of helping, they arrested us. The police extorted me and said they would only release me if I paid them money, which I did. A few months later, the gang killed my friend. My son and I were detained by United States immigration officers around McAllen, Texas, around June 12, 2018.

3.  ███ and I were separated on June 13, 2018, and I eventually learned that he was detained at BCFS near Harlingen, Texas. While in Border Patrol custody, I was handcuffed for the first time in my life and told I was going to court, and that my son should stay where he was. They said he'd still be there when I got back from court. But after court, ███ was not there. I was frantic and asked the officers where my son was, but all they said was that they didn't have that information. I didn't really have a chance to talk to him and then he was just gone. I didn't know anything about where he was going or what was going to happen to him. The same thing happened to many other parents.

4.  We were separated for approximately 33 days. I did not have contact with my son until about 9-10 days after we were separated. It was a phone call. They told me I could talk for 10 minutes. When I started speaking to ███, he just started crying uncontrollably. I kept trying to calm him down, but it was so painful for me to hear him and not be able to do anything other

than talk. I wanted to hug him or console him but I couldn't. I started crying too, and then told the guard to stop the call early. I couldn't take it, and I didn't want to put ▮ through that any further. I still had no idea if I would ever see him again.

5. Finally on July 16, 2018, ▮ and I were reunited. That was an amazing day. He saw me and we both started crying and gave each other a big hug. Since then we have been detained at the Karnes County Residential Center and ▮ has barely left my side.

6. I am afraid of being separated from my son again.

7. ▮ and I are afraid to return to Honduras because the gangs are prevalent and have attacked me before, and have killed my friends. I worry about ▮ growing up there because the gangs start recruiting boys at early ages, and even though he is only 6, I think they will start trying to recruit him very soon. I also am politically active and I was recently threatened by the national party for not supporting them. I am worried about what might happen to us if we are forced to go back to Honduras.

8. I would like to stay in the United States where ▮ and I can be safe.

9. When ▮ and I were reunited, they gave me several documents for my son. Almost everything is in English so I don't know what it says, but my lawyers at Karnes say ▮ was issued a Notice to Appear for removal proceedings on June 15, 2018. To my knowledge, he's never had a court hearing and has never seen a judge. I don't know what is happening with his removal proceedings.

10. Since being at Karnes, ▮ has not had a chance to explain his fear of returning to Honduras to immigration or asylum officers. We asked our attorneys to help us request a credible fear interview for ▮, which they did, but he still does not have an interview scheduled. My attorney looked into it and told me that ▮ will not be having an interview.

11. I had a credible fear interview before I got to Karnes, but ███ was not a part of that. I was not able to consult with ███ before the interview, and I got a negative finding. On June 13, 2018, I received an order for expedited removal. During the credible fear interview, I could not concentrate on answering the questions that the immigration official requested because I was worried about my son. I did not know where he was, and I could only think of him. Also, I did not know anything about the credible fear process, nor did I understand the asylum requirements. I did not know the information I should share about my experiences in Honduras. When I signed the document indicating that I wanted to be returned to my country with my son if it were so ordered, I picked that option because the Lady that presented me with the document to be signed told me that if I signed there, I would be reunited with my son that same day. My level of understanding to read is very low, and it takes me a lot of work to read and understand, even when the words are written in Spanish.

12. ███ does not have is own expedited removal order that I know of, and his name is not on the order that I have.

13. I spoke to the Honduran Consulate last Thursday. They told me that ███ and I will both be deported soon.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of July, 2018, in Dilley.

_____[signature]_____
███████████████

## CERTIFICATION BY TRANSLATOR

I certify that I am fluent in both the English and Spanish languages and that the attached translation of the accompanying Declaration of I.A.T. is a true and correct translation of the original.

__Gabriella Morello_____
Name of Translator

__gabriella.morello@hoganlovells.com_____
Email Address

__305.459.6500_____
Phone Number

_____
Signature

__27 July 2018_____
Date

\\DC - 046785/000001 - 12484088 v1