## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

M.M.M., ON BEHALF OF HIS MINOR )
CHILD, J.M.A., *ET AL.*, )
)
    Plaintiffs, )
)    No. 1:18-cv-1759 (PLF)
    v. )
)
JEFFERSON BEAUREGARD SESSIONS, )
III, ATTORNEY GENERAL OF THE )
UNITED STATES, *ET AL.*, )
)
    Defendants. )
_____ )

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
## FOR TEMPORARY RESTRAINING ORDER

The Court should deny a temporary restraining order and transfer this case to the Southern

District of California so that it can be considered together with *Ms. L v. ICE*, No. 18-428 (S.D.

Cal.) (Sabraw, J.), a certified class action involving claims, issues, relief, and parties that

substantially overlap with this case and in which, over a month ago, the district court issued a

preliminary injunction that the present case, if permitted to proceed, will undermine and obstruct.

In *Ms. L*, Judge Sabraw certified a nationwide class of parents of minor children separated at the

border and entered an order requiring that those families be reunified.  That court-ordered

reunification process has progressed quickly under Judge Sabraw's orders and oversight, and

multiple judges have recognized that cases raising claims and issues that overlap with *Ms. L* should

be transferred to Judge Sabraw.  During the reunification ordered by Judge Sabraw, two groups of

children—including one putative class—filed suits in the Southern District of New York seeking

to halt reunifications due to the impact that those reunifications would have on the children's

immigration proceedings.  The Southern District of New York transferred those actions to the

1

Southern District of California to be considered in conjunction with the interests of *Ms. L* class member parents in pursuing the reunification order.

This Court should do the same thing here.  In this case, a putative class of parents, on behalf of their children, which essentially parallels the certified class of parents in *Ms. L*, seeks relief from removal on behalf of themselves and their parents.  This relief overlaps with the multiple suits now before the Southern District of California—and indeed challenges the reunification requirements and process ordered and authorized by that court.  This Court should promptly transfer this case so that the claims can be considered together with the claims of the certified class of parents in *Ms. L*, and to avoid imposing inconsistent and conflicting obligations on the government.  The relief sought here is fundamentally inconsistent with the claims in *Ms. L*, where the parents pressed a theory that they are entitled to be detained with, and have immigration-removal decisions made together with, their children.  Having received that relief, and there having been no showing that reunified parents are unfit or otherwise not entitled to act on behalf of their children, claims that are purportedly brought on behalf of their children should not be separately considered in this action.

## LEGAL STANDARD

Preliminary relief is appropriate only if a plaintiff demonstrates that:  (1) he is substantially likely to succeed on the merits; (2) he will be irreparably injured if an injunction is not granted; (3) preliminary relief will not substantially injure the defendant; and (4) preliminary relief furthers the public interest.  *Barton v. District of Colum.*, 131 F. Supp. 2d 236, 241 (D.D.C. 2001) (quoting *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998)).  When a plaintiff seeks preliminary relief, he must "demonstrate that irreparable injury is *likely* in the absence of an injunction."  *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008) (emphasis in original).

2

The "D.C. Circuit 'has set a high standard for irreparable injury.'"  *Jones v. D.C.*, 177 F. Supp. 3d

542, 545 (D.D.C. 2016) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290,

297 (D.C. Cir. 2006)).  To meet this standard, "[t]he injury must be both certain and great; it must

be actual and not theoretical."  *Id.* (quoting *Chaplaincy*, 454 F.3d at 297).

## ARGUMENT

Plaintiffs seek a temporary restraining order barring Defendants from removing "all non-

citizen children, and the parents or guardians of such children, who were separated upon entry into

the United States."  Mem. 27.  This Court should deny that relief.  *First*, this Court should not

entertain this suit at all because it would obstruct and undermine a class-wide preliminary

injunction, entered in the Southern District of California in *Ms. L*, that involves claims, issues,

relief, and parties that overlap with this case.[1]  As other courts have done in recent days, this Court

should transfer this case to the Southern District of California to promote the orderly and consistent

administration of the issues and claims presented in these cases.  *Second*, this Court lacks

jurisdiction to grant the stay of removals that Plaintiffs request.  The Immigration and Nationality

Act (INA) bars district courts from enjoining the execution of removal orders.

### A. This Court Should Deny a TRO and Immediately Transfer this Case Because the Requested Relief Would Interfere with an Injunction in an Ongoing Case that Involves Overlapping Claims, Issues, Relief, and Parties.

The TRO should be denied—and the case should be transferred to the Southern District of

California—because a TRO would overlap and interfere with the reunification process being

administered by Judge Sabraw in *Ms. L*.  Judge Sabraw has ordered and is overseeing relief on the

claims of a certified class of the parents seeking relief on behalf of the putative class here with

---

[1] While the majority of the *Ms. L* class members have been reunified either in ICE custody or in the interior of the United States, the federal government is still reunifying some class members, including those removed from the United States, as they become eligible or available.

respect to their custody and removal.  Absent a severing of parental rights, those parents are entitled to act on behalf of their children in litigation—including by seeking reunification and departure from the United States as a family unit rather than separate immigration proceedings for the parent and child, as a UAC.  Judge Sabraw is also considering the very issues presented here in connection with a putative class action filed on behalf of children in New York that directly overlaps with the putative class here.  This class claim must also be promptly transferred to Judge Sabraw's court to consider the request for injunctive relief.

The "usual rule" in this Circuit is that '[w]here two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first."  *UtahAmerican Energy, Inc. v. Dep't of Labor*, 685 F.3d 1118, 1124 (D.C. Cir. 2012) (quoting *Wash. Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980)).  The D.C. Circuit follows this rule because "[c]onsiderations of comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously."  *Id.* (quoting *Wash. Metro.*, 617 F.2d at 830); *see Colo. River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts . . . the general principle is to avoid duplicative litigation."); *Crawford v. Bell*, 599 F.2d 890, 892 (9th Cir. 1979) (dismissal appropriate where "the complainant is a member in a class action seeking the same relief").

That rule supports transferring this case to the Southern District of California.  Plaintiffs seek an order that, if granted, would interfere with ongoing litigation in another court.  In *Ms. L.*, the Southern District of California approved the use of an "Election Form," which allows an alien parent to elect that, "[i]f I lose my case and am going to be removed, I would like to take my child with me."  Notice at 2, ECF No. 97.  In approving the use of the Election Form, which the class

4

plaintiffs proposed in *Ms. L*, the *Ms. L* court accepted the established principle that a parent can lawfully waive her child's potential rights to relief, including under the immigration laws. *See, e.g.*, Fed. R. Civ. P. 17(c)(1). And because this action has been brought by the parents of the minor children—*see* Compl. 1 & ¶ 10—who are class members in *Ms. L.* and have waived the rights of their children through their class counsel and pursuant to a reunification form, the parents must seek relief in the Southern District of California. The parents cannot seek to link their removal orders to their children's putative asylum claims by filing an action in another federal court. That is, they cannot seek relief that is inconsistent with what they have already received in the Southern District of California, and so their claims here should be rejected.

Here, Plaintiffs allege that the government has implemented a policy that unlawfully allows a parent to waive her child's "independent asylum and other statutory protection rights." Mem. 7. But the *Ms. L.* court has already approved the use of an Election Form—which was proposed by the parents themselves through class counsel—under which a parent can waive her child's separate immigration rights. So if this Court enjoined the government from allowing a parent to waive her child's rights, the injunction would interfere with the *Ms. L.* litigation, violate principles of comity, and undermine the orderly administration of justice.

At least two other judges have refused to hear claims that overlapped with the *Ms. L* claims. In *N.T.C. v. ICE*, No. 18-cv-6428 (S.D.N.Y. July 19, 2018), the court found that the plaintiffs' claims were, "at bottom, *directly* related to the reunification process being supervised by Judge Sabraw [in *Ms. L*]." Order at 3. The court accordingly transferred the case to Judge Sabraw. And in *E.S.R.B. v. Sessions*, No. 18-cv-6654 (S.D.N.Y. July 24, 2018), another judge in the Southern District of New York reached the same conclusion and transferred the case to Judge Sabraw.

Like the claims in the Southern District of New York cases, the claims in this case directly relate to the reunification process that Judge Sabraw is supervising in *Ms. L.* If this Court were to grant a temporary restraining order, it would affirmatively interfere with the *Ms. L* litigation. In accordance with the principles of comity and orderly administration of justice, the Court should not enter an order that would interfere with the *Ms. L* litigation. *UtahAmerican Energy*, 685 F.3d at 1124. Instead, the Court should transfer this case to Judge Sabraw.

**B. This Court Lacks Jurisdiction Over This Case.**

As discussed above, the Court should decline jurisdiction because "a complaint involving the same parties and issues has already been filed in another district." *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1161 (9th Cir. 2011). "The well-established rule is that, in cases of concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case." *Entines v. United States*, 495 F. Supp. 2d 84, 85 (D.D.C. 2007). Because the *Ms. L* case was filed before this one, and because it raises the same issues and involves many of the same parties as this case, the Court should decline jurisdiction pursuant to the first-to-file rule.

Even if the Court did not decline jurisdiction pursuant to the first-to-file rule, it would lack jurisdiction to grant the stay of removal that Plaintiffs request. The Immigration and Nationality Act (INA) deprives district courts of jurisdiction to enjoin the execution of a final expedited removal order, *see* 8 U.S.C. §§ 1252(a)(2)(A)(i), 1252(e)(1), (2), (4), and more generally forbids district courts from hearing any cause or claim that arises from the government's "decision or action . . . [to] execute removal orders," *id.* § 1252(g). These provisions foreclose the stay of removal that Plaintiffs request.

Plaintiffs allege that the government has implemented an unlawful "policy of denying [them] their rights to pursue asylum in the United States." Mem. 11. Plaintiffs claim that they are

challenging this alleged new policy under 8 U.S.C. § 1252(e)(3).  Under that provision, a party

may assert a claim that "a written policy directive, written policy guideline, or written procedure

. . . to implement [8 U.S.C. § 1225(b)], is not consistent with applicable [law]."  Such a claim must

be brought "no later than 60 days after the date the challenged . . . directive, guideline, or procedure

. . . is implemented."  8 U.S.C. § 1252(e)(3)(B).

Plaintiffs do not identify any specific written document that implements § 1225(b) and was

issued in the past 60 days.  Because section 1252(e)(3) applies only with respect to a written

document that was issued in the past 60 days, Plaintiffs do not properly invoke section 1252(e)(3).

And to the extent that Plaintiffs challenge an unwritten policy or practice, section 1252(e)(3) does

not apply.  *AILA v. Reno*, 18 F. Supp. 2d 38, 58 (D.D.C. 1998) ("[B]ased on the clear language of

the jurisdictional provision of § 242(e)(3)(A)(ii), this Court cannot review unwritten policies or

practices . . . .").  Plaintiffs' § 1252(e)(3) claim is not likely to succeed on the merits.

Plaintiffs also allege that "DHS, ICE and other Defendants promulgated, at some point

after June, 2018, internal written directives implementing the reunification order in *Ms. L* and

Executive Order 13841."  Compl. ¶ 62. Plaintiffs go on to allege that these directives "ordered

DHS and ICE personnel to effectuate the deportation of families as soon as practically possible

following reunification by securing the parent's agreement to be deported with their child,

extracting the child from removal proceedings under Section 240, and placing the child back in

the custody of the parent so that they could be prepared for immediate deportation."  *Id*.  The

complaint further alleges that the challenged policy "of denying Plaintiffs their rights to pursue

asylum . . . is reflected in written statements and directives included but not limited to the DHS

Fact Sheet . . . ."  Compl. ¶ 132.  In substance, Plaintiffs challenge: (1) the fact that after Defendants

reunified alien minors with their parents, Defendants cancelled notices to appear that it had issued

7

to the minors on the premise that they were "unaccompanied;" and (2) the process by which a parent with a final expedited order of removal may elect to be removed from the United States with her child, notwithstanding the child's assertion that she has a credible fear.  Mem. 5, 8.

Plaintiffs fail to state a claim under section 1252(e)(3), and are not likely to succeed on the merits of that claim.  Other than issuing documents needed to implement the injunction – which can't form the basis of a case under section 1252(a)(3) – Plaintiffs do not allege that there are any guidance or policies that have been issued in the last 60 days under the Executive Order or otherwise, and there are none. The DHS Fact Sheet that Plaintiffs reference is not new guidance. Indeed, Defendants' compliance with the court's Order in *Ms. L* is not the type of new policy or directive that is subject to challenge only in this district under section 1252(e)(3).  Allowing Plaintiffs' claim to proceed on that basis only opens the door to improper horizontal appeals of the decisions of other district courts.

The practices that Plaintiffs now challenge derive from two separate and hardly novel policies.  First, permitting parents to make decisions on behalf of their children reflects longstanding precepts regarding parental rights.  In fact, recognition of those parental rights is what permits the parents of the six named Plaintiffs to bring this lawsuit on the Plaintiffs' behalf.  *See* Fed. R. Civ. P. 17.  Such parental rights were also recognized by a now rescinded August 23, 2013 Immigration and Customs Enforcement internal directive entitled "Facilitating Parental Interests in the Course of Civil Immigration Enforcement Activities," which defined parental rights as "[t]he fundamental rights of parents to make decisions concerning the care, custody, and control of their minor children without regard to the child's citizenship, as provide for and limited by applicable law."  *United States v. Dominguez-Portillo*, No. EP-17-MJ-4409-MAT, 2018 WL 315759, at *11

8

(W.D. Tex. Jan. 5, 2018).[2]  Judge Sabraw's own statements reflect his acknowledgment of parental rights in this very context.  *See* Exhibit 1, *Ms. L*, No. 18-cv-428, July 28, 2018 Status Conf. Tr. 39:19-40:2 ("But under the law what matters in the parent.  I mean, what this case has always been about is the due process right to family integrity. . . .  And it is the parent that makes the decisions.  In a perfect world it could be a family decision, but the child's view, under the law, doesn't matter.  It is the parent's view, ultimately, whether to remove together or separately.").  In any event, the UAC provisions and procedures were designed to address unaccompanied minors, and are not appropriate when a parent has custody of, and to act for and make decisions on behalf of, the child.  *See* 6 U.S.C. § 279(g) (UAC provisions apply only when "no parent or legal guardian is available to provide care and physical custody").  And Judge Sabraw is currently considering the impact of his injunction with respect to children, given the requests before him with respect to a stay of removal to permit reunified families to confer and the transferred class action from New York.  These are issues that relate to injunction compliance and implementation; accordingly, Plaintiffs' § 1252(e)(3) claim is not likely to succeed on the merits.

### C.  Plaintiffs Are Not Entitled to Classwide Relief.

Here, Plaintiffs' only attempt to distinguish this action from *Ms. L* is Plaintiffs' claim under § 1252(e)(3).  Even if Plaintiffs properly invoked § 1252(e)(3), they would not be entitled to relief beyond the named Plaintiffs. Section 1252(e)(1)(B) provides that "no court may . . . certify a class under Rule 23 of the Federal Rules of Civil Procedure in any action for which judicial review is authorized under a subsequent paragraph of this subsection."  Accordingly, for a § 1252(e)(3) claim (a claim for which judicial review is authorized under a paragraph of subsection (e) that is

---

[2] That directive was superseded on August 29, 2017 by a directive entitled "Detention and Removal of Alien Parents or Legal Guardians."  *See*  https://www.ice.gov/doclib/detention-reform/pdf/directiveDetainedParents.pdf (last visited July 29, 2018).

subsequent to paragraph (e)(1)), a court may not certify a class action.  If the Court issues a

temporary restraining order, the order should grant relief only to the named Plaintiffs.  8 U.S.C.

§ 1252(e)(1)(B).

Dated: July 30, 2018

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

SCOTT G. STEWART
Deputy Assistant Attorney General

AUGUST E. FLENTJE
Special Counsel

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

Respectfully submitted,

*/s/ Jeffrey S. Robins*
_____
JEFFREY S. ROBINS
Assistant Director
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Washington, DC 20044
Telephone: (202) 616-1246
Facsimile: (202) 305-7000
jeffrey.robins@usdoj.gov

*Attorneys for Defendants*

# EXHIBIT I

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA


BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

_____
                                        )
MS. L. AND MS. C.,                      )
                                        )CASE NO. 18CV0428-DMS
           PETITIONERS-PLAINTIFFS,      )
                                        )
VS.                                     )
                                        )SAN DIEGO, CALIFORNIA
U.S. IMMIGRATION AND CUSTOMS            ) FRIDAY JULY 27, 2018
ENFORCEMENT ("ICE"); U.S. DEPARTMENT    ) 1:30 P.M. CALENDAR
OF HOMELAND SECURITY ("DHS"); U.S.      )
CUSTOMS AND BORDER PROTECTION ("CBP");  )
U.S. CITIZENSHIP AND IMMIGRATION        )
SERVICES ("USCIS"); U.S. DEPARTMENT     )
OF HEALTH AND HUMAN SERVICES ("HHS");   )
OFFICE OF REFUGEE RESETTLEMENT ("ORR"); )
THOMAS HOMAN, ACTING DIRECTOR OF ICE;   )
GREG ARCHAMBEAULT, SAN DIEGO FIELD      )
OFFICE DIRECTOR, ICE; ADRIAN P. MACIAS, )
EL PASO FIELD DIRECTOR, ICE; FRANCES M. )
JACKSON, EL PASO ASSISTANT FIELD        )
OFFICE DIRECTOR, ICE; KIRSTJEN NIELSEN, )
SECRETARY OF DHS; JEFFERSON BEAUREGARD  )
SESSIONS III, ATTORNEY GENERAL OF THE   )
UNITED STATES; L. FRANCIS CISSNA,       )
DIRECTOR OF USCIS; KEVIN K.             )
MCALEENAN, ACTING COMMISSIONER OF       )
CBP; PETE FLORES, SAN DIEGO FIELD       )
DIRECTOR, CBP; HECTOR A. MANCHA JR.,    )
EL PASO FIELD DIRECTOR, CBP;            )
ALEX AZAR, SECRETARY OF THE             )
DEPARTMENT OF HEALTH AND HUMAN          )
SERVICES; SCOTT LLOYD, DIRECTOR         )
OF THE OFFICE OF REFUGEE RESETTLEMENT,  )
                                        )
           RESPONDENTS-DEFENDANTS.      )
----------------------------------------

REPORTER'S TRANSCRIPT OF PROCEEDINGS
STATUS CONFERENCE

```
COUNSEL APPEARING:

FOR PLAINTIFF:                    LEE GELERNT, ESQ.
                                  ACLU IMMIGRANT RIGHTS PROJECT
                                  125 BROAD STREET 18TH FLOOR
                                  NEW YORK, NEW YORK 10004

                                  BADIS VAKILI, ESQ.
                                  ACLU FOUNDATION OF SAN DIEGO
                                  AND IMPERIAL COUNTIES
                                  P.O. BOX 87131
                                  SAN DIEGO, CALIFORNIA 92138

                                  STEPHAN B. KANG, ESQ.
                                  ACLU OF NORTHERN CALIFORNIA
                                  39 DRUMM STREET
                                  SAN FRANCISCO, CALIFORNIA 94111

FOR DEFENDANT:                    SCOTT STEWART, ESQ.
                                  SARAH B. FABIAN, ESQ.
                                  (TELEPHONICALLY)
                                  U.S. DEPARTMENT OF JUSTICE
                                  OFFICE OF IMMIGRATION LITIGATION
                                  P.O. BOX 868
                                  BEN FRANKLIN STATION
                                  WASHINGTON, DC 20044




REPORTED BY:                      LEE ANN PENCE,
                                  OFFICIAL COURT REPORTER
                                  UNITED STATES COURTHOUSE
                                  333 WEST BROADWAY, ROOM 1393
                                  SAN DIEGO, CALIFORNIA 92101
```

| | |
|---|---|
| 1 | **SAN DIEGO, CALIFORNIA — FRIDAY, JULY 27, 2018 — 1:35 P.M.** |
| 2 | * * * |
| 3 | **THE CLERK:**  NO. 15 ON CALENDAR, CASE NO. 18CV0428, |
| 4 | MS. L. VERSUS IMMIGRATION AND CUSTOMS ENFORCEMENT; ON FOR |
| 5 | STATUS CONFERENCE. |
| 6 | **THE COURT:**  GOOD AFTERNOON. |
| 7 | CAN I HAVE APPEARANCES, PLEASE? |
| 8 | **MR. GELERNT:**  GOOD AFTERNOON, YOUR HONOR.  LEE |
| 9 | GELERNT FROM THE ACLU FOR PLAINTIFFS. |
| 10 | **MR. KANG:**  GOOD AFTERNOON, YOUR HONOR.  STEPHEN KANG |
| 11 | FROM THE ACLU FOR PLAINTIFFS. |
| 12 | GOOD AFTERNOON, YOUR HONOR.  BARDIS VAKILI FOR THE |
| 13 | PLAINTIFFS. |
| 14 | **THE COURT:**  THANK YOU. |
| 15 | **MR. STEWART:**  GOOD AFTERNOON, YOUR HONOR.  SCOTT |
| 16 | STEWART FOR THE DEFENDANTS. |
| 17 | AND MY COLLEAGUE, MS. FABIAN, I BELIEVE IS ON THE |
| 18 | LINE AS WELL. |
| 19 | **THE COURT:**  IT MAY BE THAT THOSE WHO ARE ON THE LINE |
| 20 | ARE ON THE MUTED SYSTEM.  SO I THINK I WILL BE COMMUNICATING |
| 21 | WITH YOU DIRECTLY, MR. STEWART, GOING FORWARD. |
| 22 | THERE IS ALSO -- AND WE CAN ADDRESS IT IN A MOMENT. |
| 23 | THERE IS ANOTHER NEW YORK LAWSUIT INVOLVING NINE CHILDREN |
| 24 | BEING REPRESENTED BY THE GREENBERG TRAURIG FIRM.  I DON'T |
| 25 | THINK THOSE ATTORNEYS ARE ON THE LINE AND THEY MAY BE CALLING |

1  IN AFTER, LIKE WE DID LAST WEEK.  AND JUDGE RAKOFF IS

2  TRANSFERRING THAT CASE HERE AS WELL.

3          DO YOU HAVE ANY INFORMATION ON THAT CASE?

4          **MR. STEWART:**  SPOTTY INFORMATION, YOUR HONOR.  IT

5  HAS BEEN MOVING A LITTLE SWIFTLY.  I KNOW THAT THERE WAS A --

6  I BELIEVE SOME KIND OF A QUICK HEARING WITH JUDGE RAKOFF

7  SCHEDULED ONLY MINUTES AGO.  SO IT SOUNDS LIKE THAT DID

8  HAPPEN.

9          **THE COURT:**  IT SOUNDS AS THOUGH THAT CASE IS GOING

10  TO WORK MUCH LIKE WHAT WE HAVE IN PLACE HERE ON THE PENDING

11  NEW YORK CASE, WHICH WE WILL SPEAK ABOUT IN A MOMENT.

12          LET'S RUN THROUGH THE JOINT STATUS REPORT.  I HAVE

13  SIMILAR QUESTIONS, JUST SO I'M CLEAR.  AND THEN WE CAN ADDRESS

14  THE REQUEST FOR TRO, AND THEN GOING FORWARD THE ISSUES THAT

15  NEED TO BE ADDRESSED.

16          AS I READ THE JOINT REPORT, FROM THE GOVERNMENT'S

17  PERSPECTIVE, ON ALL CLASS MEMBERS WHO ARE ELIGIBLE FOR

18  REUNIFICATION WHO ARE IN ICE DETENTION, REUNIFICATION HAS BEEN

19  COMPLETED.

20          **MR. STEWART:**  YES, YOUR HONOR.  THAT'S MY

21  UNDERSTANDING.

22          **THE COURT:**  SO THERE ARE 1,820 CHILDREN IN THIS

23  GROUP THAT ARE MATCHED UP WITH ELIGIBLE CLASS MEMBERS, AND

24  1,442 HAVE BEEN REUNITED.  378 WERE REUNITED EITHER IN THE

25  INTERIOR OR WITH OTHER SPONSORS OR WITH PARENTS IN DHS CUSTODY

JULY 27, 2018

1    EARLIER IN THE PROCESS, OR THE CHILD TURNED 18.

2          **MR. STEWART:**  THAT'S MY UNDERSTANDING, YOUR HONOR.

3    AND MY UNDERSTANDING, JUST IN THE COURSE OF SOME UPDATES, I

4    BELIEVE THE TOTAL NUMBER –– THE 1820 AND THE 1442 HAVE BOTH

5    GONE UP.  WE DON'T QUITE HAVE FIRM ENOUGH NUMBERS FOR ME TO

6    PRESENT THEM TO YOU, BUT MY UNDERSTANDING IS THAT BOTH OF

7    THOSE HAVE GONE UP.

8          TO REAFFIRM WHAT YOU SAID EARLIER, OUR UNDERSTANDING

9    IS THAT THERE IS NO ELIGIBLE CLASS MEMBER PARENT IN ICE

10   CUSTODY WHO HAS NOT BEEN REUNITED.

11         **THE COURT:**  DO YOU HAVE AN APPROXIMATION OF WHAT THE

12   NUMBERS ARE NOW, OR ARE YOU JUST NOT COMFORTABLE?

13         **MR. STEWART:**  IT IS, I THINK, SEVERAL DOZENS HIGHER

14   FOR BOTH CATEGORIES, YOU KNOW, IS THE ROUGH APPROXIMATION, SO

15   AN APPRECIABLE NUMBER.  BUT WE ARE STILL DRILLING DOWN, AND

16   WANT TO GET GOOD INFORMATION ON THAT, YOUR HONOR.

17         **THE COURT:**  ALL RIGHT.  AND THEN THERE IS AN

18   INDICATION THAT THERE ARE 20 CHILDREN WHO ARE NOT SEPARATED

19   FROM THEIR PARENTS.  WHAT IS THAT CATEGORY?

20         **MR. STEWART:**  I NEED TO DRILL DOWN A LITTLE FURTHER,

21   YOUR HONOR.  I THINK THAT SOME OF THOSE MIGHT FALL IN THE

22   CROSSED THE BORDER WITHOUT ANY PARENT KIND OF A THING BUT WERE

23   SWEPT IN GIVEN HHS'S EFFORT TO BE OVERLY INCLUSIVE AND CAST A

24   WIDE EFFORT.

25         **THE COURT:**  ALL RIGHT.

JULY 27, 2018

```
 1          MR. STEWART:  SO I THINK, TECHNICALLY, THEY WOULD, I
 2    THINK, FALL OUT OF THE 2551, BUT WE RETAINED THE 2551 JUST TO
 3    KIND OF KEEP A GOOD BASELINE THERE.
 4          THE COURT:  OF THE 1442 THAT HAVE BEEN REUNIFIED,
 5    HOW MANY ARE DETAINED TOGETHER AND HOW MANY WERE PAROLED?
 6          MR. STEWART:  SURE, YOUR HONOR.  I DO HAVE SOME
 7    NUMBERS ON THOSE.  A FEW OF THESE ARE STILL UNDERGOING MANUAL
 8    REVIEW, BUT I WILL GIVE YOU WHAT I HAVE.  AND I RECOGNIZE THIS
 9    DOESN'T ADD UP PERFECTLY.
10          BUT THE NUMBERS I HAVE ARE THAT THE LARGE MAJORITY
11    OF THOSE WERE REUNIFIED AND THEN RELEASED.  THAT IS 1,133
12    REUNIFIED AND THEN RELEASED FROM ICE CUSTODY.
13          I HAVE 300 --
14          THAT'S STILL UNDERGOING MANUAL REVIEW.
15          300 FAMILIES ARE DETAINED TOGETHER IN FAMILY
16    RESIDENTIAL CENTERS.
17          SO, AGAIN, THAT DOESN'T QUITE HIT 1442, I BELIEVE
18    BECAUSE OF JUST THE TIMING AND DATA LAGS.  BUT THAT'S ABOUT
19    RIGHT.
20          THEN THERE ARE A FEW -- THE FOLKS -- MY
21    UNDERSTANDING IS THAT FOLKS DO REMAIN IN ICE CUSTODY IN SOME
22    CASES BUT THAT IS WHERE THERE IS SOME KNOWN BARRIERS TO
23    REMOVAL.  AND THE NUMBER I HAVE ON THAT IS 145 FOR KNOWN
24    BARRIERS TO REMOVAL.
25          THE COURT:  WHAT WOULD A KNOWN BARRIER FOR REMOVAL
```

```
 1   BE?
 2           MR. STEWART:  I AM SORRY.  A KNOWN BARRIER TO
 3   REUNIFICATION.
 4           THE COURT:  ALL RIGHT.
 5           MR. STEWART:  MY MISSTATEMENT.  CRIMINAL HISTORY OR
 6   FITNESS TYPE ISSUES, I BELIEVE.
 7           THE COURT:  THOSE ARE SIMPLY PARENTS WHO FALL OUT OF
 8   THE CLASS.  THEY ARE NOT BEING -- THEY ARE INELIGIBLE.
 9           MR. STEWART:  THAT KIND OF THING.  YES, YOUR HONOR.
10           THE COURT:  THERE ARE 711, APPROXIMATELY, THAT ARE
11   INELIGIBLE ACCORDING TO THE GOVERNMENT, OR NOT AVAILABLE.
12           THERE ARE 120 WHO WAIVED REUNIFICATION.  AND I KNOW
13   THAT THAT IS A DISPUTED POINT THAT WE WILL COME TO.
14           HAS THAT NUMBER CHANGED OR IS THAT THE NUMBER YOU
15   HAVE PRESENTLY?
16           MR. STEWART:  THAT'S STILL, I BELIEVE, THE NUMBER I
17   HAVE, YOUR HONOR.  IF I MISSTATE THAT I WILL TRY TO CORRECT --
18   IF I AM MISSING AN UPDATE THERE, I WILL TRY TO CORRECT IT.
19           I DO BELIEVE THE 711 HAS DROPPED TO 650, THOUGH.
20           THE COURT:  650?
21           MR. STEWART:  YEAH.
22           THE COURT:  THE REST, THE BALANCE, THEN, WHAT IS
23   THAT, 61, WERE REUNIFIED?  THEY CAME INTO THE ELIGIBILITY
24   CLASS, OR WHAT HAPPENED?
25           MR. STEWART:  LET ME SEE IF I CAN DRILL DOWN A
```

JULY 27, 2018

```
 1   LITTLE FURTHER ON THAT 61, YOUR HONOR.  SOME, I BELIEVE, WERE
 2   RELEASED INTO THE INTERIOR, I SUSPECT, I BELIEVE AS PART OF
 3   REUNIFICATIONS.  I THINK OTHERS WERE FORMERLY IN A CATEGORY
 4   LISTED AS UNDER CASE FILE REVIEW WHERE WE JUST NEEDED TO KNOW
 5   MORE, AND WE WERE ABLE TO DRILL DOWN.  FOR EXAMPLE, THE VERY
 6   BOTTOM NUMBER THERE WAS 94 UNDER CASE FILE REVIEW, AND THAT
 7   HAS NOW DROPPED TO 35.  SO WE HAVE BEEN ABLE TO GET KIND OF TO
 8   THE BOTTOM OF THOSE.
 9          THE COURT:  SO THAT NUMBER DROPPED DOWN BECAUSE THE
10   PARENTS ARE WHERE?  WHAT HAPPENED TO THEM?
11          MR. STEWART:  I THINK -- I THINK IN SOME CASES WERE,
12   I BELIEVE, IN TOUCH OR STARTING THE PROCESS NOW THAT WE, YOU
13   KNOW, HAVE FOUND OUT WHO THEY ARE.  AND THEY MAY KIND OF COME
14   INTO THE -- BE MOVING INTO THE AVAILABLE CATEGORY, JUST DOING
15   THE PROCESS TO MOVE THINGS TOWARD REUNIFICATION, I BELIEVE.
16          WE JUST DIDN'T HAVE A LOT OF INFORMATION ABOUT THEM
17   AT THE TIME.  OR HAD NOT COMPLETED OUR ASSESSMENT AT THE TIME.
18          THE COURT:  MS. FABIAN, CAN YOU HEAR ME?
19          MS. FABIAN:  YES, SIR.
20          THE COURT:  OKAY.  VERY GOOD.  DO YOU WANT TO
21   INQUIRE OF ANYONE ELSE?
22          I THINK WE ARE PAUSING FOR A MOMENT TO ATTEMPT TO
23   ADD ONE OTHER PERSON.
24          THE CLERK:  NO, NO.
25          CAN I CONFIRM WE STILL HAVE MS. KRAUSE ON THE LINE
```

JULY 27, 2018

```
 1   AND YOUR GROUP.  MS. KRAUSE, ARE YOU ABLE TO HEAR?
 2             MS. KRAUSE:  YES, SORRY.
 3             THE CLERK:  THE MEDIA WHO CALLED IN AREN'T ABLE TO
 4   HEAR.  IF I UNMUTE THE OTHER FOLKS, CAN WE JUST CHECK?
 5             THE COURT:  YES.
 6             THE CLERK:  WE CAN HEAR THEM.
 7             THIS IS THE COURTROOM OF JUDGE SABRAW.  CAN I VERIFY
 8   THAT THE MEDIA THAT IS ON THE LINE ARE ABLE TO HEAR THE
 9   COURTROOM PROCEEDINGS NOW?
10             (DISCUSSION REGARDING TELEPHONIC CONFERENCE
11             CALL)
12             THE COURT:  LET'S KEEP GOING WHILE WE VERIFY THAT.
13             CONTINUING WITH THE LIST, THERE ARE 7 CHILDREN WHERE
14   REUNIFICATION IS PRECLUDED BY PLAINTIFFS AND COURT ORDER IN
15   SEPARATE LITIGATION.  THAT'S THE NEW YORK GROUP?
16             MR. STEWART:  YES, YOUR HONOR.  AND I THINK IT IS A
17   LITTLE BIT IN FLUX, AS YOUR HONOR KNOWS.  BUT IT IS STILL IN
18   THE TEENS OR THEREABOUTS.  I MEAN, 20, MAYBE 30.  BUT IT IS A
19   LITTLE HARD TO TRACK BECAUSE SOME WERE MOVED BEFORE.
20             THE COURT:  ALL RIGHT.
21             THE RED FLAG GROUPS ARE SELF-EXPLANATORY.
22             RELEASED INTO THE INTERIOR, 79.  IS THAT NUMBER THE
23   SAME?
24             MR. STEWART:  I BELIEVE THAT HAS DROPPED TO 43, YOUR
25   HONOR.  AND I BELIEVE THAT'S LARGELY WHERE THE PARENTS WERE
```

JULY 27, 2018

```
1   RELEASED INTO THE INTERIOR, AND THEN THERE WAS A REUNIFICATION
2   IN MANY OF THOSE CASES, WHAT THE UNDERSTANDING IS FOR THE 79
3   TO 43.
4           THE COURT:  NOW, THE 43 THAT ARE RELEASED IN THE
5   INTERIOR, ARE THOSE RELEASED AND IT IS UNKNOWN WHERE THEY ARE?
6           MR. STEWART:  I THINK WE ARE STILL CONFIRMING
7   CONTACT WITH SOME THERE, YOUR HONOR.  I WILL TRY TO DRILL DOWN
8   ON THAT 43.
9           THE COURT:  THEN THE NEXT NUMBER, 431, ARE THOSE THE
10  PARENTS THAT HAVE BEEN REMOVED WITHOUT CHILDREN?
11          MR. STEWART:  NOT NECESSARILY, YOUR HONOR.  WE ARE
12  STILL GETTING SOME OF THE NUMBERS THERE, BUT SOME OF THOSE ARE
13  REMOVALS WITH CHILDREN, SOME ARE REMOVALS POST WAIVER WITHOUT
14  CHILDREN, AS I UNDERSTAND IT.  BUT WE ARE STILL GETTING MORE
15  GRANULARITY THERE.
16          THE COURT:  DO YOU KNOW HOW MANY, APPROXIMATELY, ARE
17  REMOVALS WITHOUT THEIR CHILDREN?
18          MR. STEWART:  I AM CHECKING TO SEE IF I HAVE -- I
19  DON'T BELIEVE I HAVE CERTAINTY YET ON THAT, YOUR HONOR.  BUT I
20  WILL LET YOU KNOW IF I HAVE OVERLOOKED IT AND WE WILL GET THAT
21  TO YOU ON THAT 431.
22          THE COURT:  MY ASSUMPTION IS THAT MOST OF THE 431,
23  IT IS THE GROUP THAT PLAINTIFFS ARE MOST CONCERNED ABOUT
24  PRESENTLY.  IT WOULD INCLUDE -- I AM ASSUMING THE VAST
25  MAJORITY OF THOSE ARE PARENTS WHO WERE REMOVED SEPARATE FROM
```

1    THEIR CHILDREN.  IS THAT AN INCORRECT ASSUMPTION?

2              **MR. STEWART:**  I THINK THAT IS PROBABLY CORRECT, YOUR

3    HONOR.  MY INITIAL -- THE BULK WOULD BE PRE-PRELIMINARY

4    INJUNCTION REMOVALS WITHOUT PARENTS, AND WE NEED TO JUST DO

5    SOME WORK TO GET THOSE ADDRESSED.

6              **THE COURT:**  THEN THERE IS A REFERENCE IN THE

7    BRIEFING TO 52 PARENTS THAT HAVE NOT BEEN LOCATED.

8              IS THAT THE PRESENT SITUATION?

9              **MR. STEWART:**  I BELIEVE THAT THAT NUMBER HAS DIPPED,

10   YOUR HONOR.  I THINK THERE WAS FOR SOME WHOSE LOCATION WAS

11   UNCLEAR THEY WOULD FALL UNDER THE ADULT LOCATION UNDER CASE

12   FILE REVIEW, AND THAT WAS 94.  THAT HAS GONE DOWN TO 35 SO IT

13   SHOWS -- JUST KIND OF REFLECTS THAT WE ARE DOING A CAREFUL

14   DIVE IN FINDING FOLKS AND MOVING ON THOSE.

15             **THE COURT:**  OKAY.  SO THIS WAS AT PAGE 6, PARAGRAPH

16   B, STARTING AT LINE 5.  40 CHILDREN WITH NO PARENTAL

17   INFORMATION, 12 CHILDREN FOR WHOM THE PARENTS A-NUMBER IS

18   LISTED BUT NO NAME OR LOCATION.  IS THAT THE NUMBER THAT IS

19   SEEING SOME IMPROVEMENT THAT WAS 94 AND NOW DOWN TO 35, SO YOU

20   ARE LOCATING SOME OF THOSE PARENTS?

21             **MR. STEWART:**  I WILL CHECK ON THAT, YOUR HONOR, BUT

22   I SUSPECT THERE IS SOME OVERLAP THERE.  IT MIGHT JUST BE A

23   FUNCTION OF GIVING THE BEST DATA WE HAD AT THE TIME AND JUST

24   NOT HAVING EVERYTHING AS YOUR HONOR HAD CONTEMPLATED.  BUT I

25   WILL CHECK ON THAT DATA ON PAGE 6.

JULY 27, 2018

1        **THE COURT:**  THE LAST STATUS REPORT FROM JULY 23

2   INDICATED CLASS MEMBERS WITH FINAL ORDERS OF REMOVAL WAS 900.

3   IS THAT THE -- THE NUMBER REMAINS THE SAME?

4        **MR. STEWART:**  I AM NOT SURE THAT I HAVE -- I DON'T

5   THINK THAT I HAVE ANY SHIFT ON THAT NUMBER, YOUR HONOR.

6        **THE COURT:**  OF THESE 900, WHERE ARE THEY?  IT SOUNDS

7   LIKE MANY OF THEM ARE RELEASED INTO THE INTERIOR AND HAVE A

8   REPORT DATE LATER?

9        **MR. STEWART:**  I BELIEVE A LOT ARE, I BELIEVE,

10  RELEASED, YOUR HONOR, JUST BY THE NATURE OF THE REUNIFICATION.

11  SOME ARE JUST KIND OF ON MONITORS OR SUPERVISION REGIMES.  I

12  DON'T HAVE PARTICULARS ON JUST SORT OF HOW FAR OUT DATES, OR

13  THE LIKE, HAVE BEEN PLANNED FOR THOSE.

14       **THE COURT:**  DO YOU HAVE ANY IDEA WHAT THE BREAKDOWN

15  IS, SO OF THOSE 900 HOW MANY ARE IN RESIDENTIAL CENTERS

16  DETAINED TOGETHER AND HOW MANY ARE RELEASED?

17       **MR. STEWART:**  I DON'T BELIEVE I HAVE THAT NUMBER

18  YET, YOUR HONOR.  I CAN LOOK.

19       **THE COURT:**  THEN WHAT DOES THAT MEAN, FINAL ORDER OF

20  REMOVAL.  DOES THAT MEAN THERE ARE NO MORE APPEALS AND MOST OF

21  THESE ARE EXPEDITED REMOVALS?

22       **MR. STEWART:**  GENERALLY -- AS BETWEEN SORT OF FINAL

23  ORDER OF REMOVAL OR EXECUTABLE ORDER OF REMOVAL, YOUR HONOR?

24       **THE COURT:**  YES.

25       **MR. STEWART:**  I THINK WHAT THAT MEANS IS FINAL ORDER

JULY 27, 2018

```
1    OF REMOVAL IN THIS CONTEXT I THINK WILL GENERALLY MEAN
2    SOMEBODY WHO IS IN EXPEDITED REMOVAL BUT HAS NOT GOTTEN THE
3    IMMIGRATION JUDGE REVIEW PORTION OF IT.  AND THEN ONCE THEY
4    GET THAT REVIEW AND IF THEY DON'T GET RELIEF FROM THAT THEN IT
5    BECOMES AN EXECUTABLE ORDER OF REMOVAL.  I THINK THAT IS
6    GENERALLY HOW IT PLAYS OUT.
7              THE COURT:  DO WE KNOW HOW MANY HAVE AN EXECUTABLE
8    ORDER OF REMOVAL?  THAT WOULD BE THE GROUP THAT IS AT ISSUE
9    WITH RESPECT TO THE REQUEST FOR TEMPORARY RESTRAINING ORDER,
10   CORRECT?
11             MR. STEWART:  I THINK YES, YOUR HONOR.  I BELIEVE
12   THAT'S MOST IMMEDIATELY AT STAKE, YES.  BUT I THINK THOSE
13   THINGS, THEY MAY MOVE SOMEWHAT SWIFTLY SO IT IS PROBABLY A
14   DYNAMIC GROUP.  BUT I AM NOT SURE OF THE NUMBERS THERE.
15             THE COURT:  DO YOU HAVE ANY IDEA, MR. GELERNT?
16             MR. GELERNT:  WE DO NOT, YOUR HONOR.
17             MS. FABIAN:  YOUR HONOR, THIS IS MS. FABIAN.
18             I THINK WE DO HAVE SOME OF THAT INFORMATION.  IT IS
19   NOT CURRENT BUT I COULD GIVE THE LATEST NUMBERS THAT WE HAD ON
20   THAT.
21             THE COURT:  YES.
22             MS. FABIAN:  SO EXECUTABLE FINAL ORDERS THE TOTAL
23   NUMBER WAS AROUND 1,000, I BELIEVE, BUT NOT ALL OF THOSE ARE
24   DETAINED.  THE NUMBER DETAINED IS MUCH LOWER.
25             THE COURT:  SO WHEN YOU SAY ABOUT 1,000 EXECUTABLE
```

1  ORDERS OF REMOVAL, THAT MEANS THE APPEALS HAVE BEEN EXHAUSTED

2  AND THEY ARE READY TO BE REMOVED?

3        **MS. FABIAN:**  WELL, IT IS NOT AN APPEAL PROCESS BUT

4  IT DOES MEAN THAT, YES, THEY HAVE COMPLETED THEIR REVIEW

5  PROCESS.

6        AS MR. STEWART DESCRIBED, IT IS -- THE ORDER BECOMES

7  FINAL AFTER THE INITIAL CREDIBLE FEAR INTERVIEW BUT THEY CAN

8  THEN SEEK REVIEW BY AN IMMIGRATION JUDGE AND THE ORDER IS

9  EXECUTABLE IF THERE IS A DENIAL BY THE IMMIGRATION JUDGE.

10        **THE COURT:**  SO OF THESE 1,000, ARE THERE MANY THAT

11  WILL BE PENDING REVIEW BEFORE AN IMMIGRATION JUDGE?

12        **MS. FABIAN:**  WELL, THOSE 1,000 WOULD HAVE COMPLETED

13  REVIEW BY AN IMMIGRATION JUDGE AND BEEN DENIED.

14        **THE COURT:**  OKAY.  SO EXECUTABLE MEANS THE PROCESS

15  IS OVER AND THEY --

16        **MS. FABIAN:**  CORRECT.

17        **THE COURT:**  THE GOVERNMENT IS POSITIONED TO REMOVE

18  THOSE INDIVIDUALS.

19        **MS. FABIAN:**  CORRECT.  BUT IN THIS CASE NOT ALL OF

20  THOSE ARE IN CUSTODY AT THIS TIME.

21        **THE COURT:**  HOW MANY ARE IN CUSTODY?  I ASSUME THEY

22  WOULD BE IN RESIDENTIAL CENTERS.

23        **MS. FABIAN:**  THE LAST NUMBER I HAD -- WELL, TO

24  CLARIFY.  I THINK THOSE THAT ARE IN CUSTODY ARE NOT

25  NECESSARILY IN CUSTODY WITH THEIR CHILDREN BECAUSE SOME OF

JULY 27, 2018

1   THOSE MAY HAVE DECLINED REUNIFICATION.  THEY MAY BE IN CUSTODY

2   BUT THEY MAY NOT BE IN CUSTODY WITH THEIR CHILD.  SOME WILL

3   AND SOME WON'T BE.  BUT THAT NUMBER WAS 392.

4        **THE COURT:**  OKAY.  392 IN CUSTODY WITH AN EXECUTABLE

5   ORDER OF REMOVAL.  THE BALANCE, SO APPROXIMATELY 600, ARE

6   PAROLED IN THE COMMUNITY BUT THEY HAVE AN EXECUTABLE ORDER OF

7   REMOVAL; IS THAT RIGHT?

8        **MS. FABIAN:**  I THINK THAT IS CORRECT, IF I AM

9   READING THE NUMBERS CORRECTLY.

10        **THE COURT:**  OKAY.  WHAT'S THE TIMETABLE, FOR

11   EXAMPLE, FOR THOSE WHO ARE RELEASED IN THE COMMUNITY BUT HAVE

12   AN EXECUTABLE ORDER OF REMOVAL; DO THEY ALREADY HAVE DEPARTURE

13   DATES OR IS THAT SOMETHING THAT IS COMING?

14        **MS. FABIAN:**  I THINK THAT IS GOING TO BE AN

15   INDIVIDUALIZED QUESTION, BASED ON REALLY WHERE THEY STAND IN

16   THE PROCESS AS FAR AS ICE PREPARING FOR REMOVAL.  SOME MAY

17   HAVE TRAVEL DOCUMENTS AND BE ELIGIBLE TO BE PICKED UP FOR

18   REMOVAL AND SOME MAY NOT.  I COULDN'T ANSWER THAT ON A

19   GENERALIZED BASIS.

20        **THE COURT:**  THAT'S THE SAME FOR THE 390 OR SO IN ICE

21   CUSTODY, THEY MAY NOT HAVE A DATE YET FOR ACTUAL REMOVAL?

22        **MS. FABIAN:**  CORRECT.  THERE ARE A FEW STEPS TO THE

23   REMOVAL PROCESS, SO SOME MAY BE ABLE TO BE REMOVED IMMEDIATELY

24   AND SOME MAY BE IN THE PROCESS OF OBTAINING A TRAVEL DOCUMENT.

25        **THE COURT:**  OKAY.  THANK YOU.

JULY 27, 2018

```
1              MR. STEWART:  YOUR HONOR, I AM HEARING FROM, I THINK

2    BOTH OF OUR FOLKS, THAT FOLKS MAY NOT BE ABLE TO HEAR ON THE

3    LINE.

4              THE COURT:  YES.  I HAVE HEARD THAT.  THE DIFFICULTY

5    IS --

6              AT&T OPERATOR:  THIS IS LAURIE FROM AT&T

7    TELECONFERENCE CENTER.  DO I HAVE THE HOST OF THE CALL ON?  WE

8    ARE NOT ABLE TO HEAR THE CALL.  FOLKS ARE SAYING THEY ARE NOT

9    ABLE TO HEAR.  IF I HAVE THE HOST ON THE CALL, PLEASE UNMUTE.

10             (DISCUSSION REGARDING TELEPHONIC CONFERENCE

11             CALL)

12             THE COURT:  WE HAVE TO DROP THE CALL.  WE ARE GOING

13   TO HAVE TO DROP THE LINE, AND JUST WITH OTHER COUNSEL, THEY

14   WILL HAVE TO CALL BACK.  THAT'S UNFORTUNATE, BUT THE SYSTEM IS

15   NOT WORKING.

16             LET'S CONTINUE AND GO DOWN THE LIST HERE.

17             THE GOVERNMENT HAS INDICATED THAT IT HAS PROVIDED

18   LISTS FOR THOSE WHO HAVE BEEN REMOVED OR RELEASED IN ICE

19   CUSTODY.  THESE ARE AS OF JULY 25.  THOSE WHO SIGNED

20   COURT-APPROVED ELECTION FORMS REQUESTING TO BE REUNIFIED OR

21   WAIVING REUNIFICATION OR REQUESTING TIME TO CONSULT WITH

22   COUNSEL, AND A LIST OF INDIVIDUALS WHO WERE EITHER REUNIFIED

23   OR RELEASED OR DETAINED IN ICE RESIDENTIAL CENTERS.

24             DID YOU GET ALL OF THAT INFORMATION, MR. GELERNT?

25             MR. GELERNT:  YOUR HONOR, WE DID NOT GET ALL OF THAT
```

1   INFORMATION.  WE DO NOT HAVE A LIST OF ALL OF INDIVIDUALS WHO

2   HAVE BEEN REUNITED.  WE DO NOT BELIEVE WE HAVE A LIST OF THE

3   BREAKDOWN OF WHO HAS BEEN DETAINED AND WHO HAS BEEN RELEASED.

4   WE HAVE A LIST OF WHO HAS BEEN DEPORTED.

5          **THE COURT:**  DO YOU HAVE ANY INFORMATION ON THAT, MR.

6   STEWART?

7          **MR. STEWART:**  I HAVE TO RECHECK, BUT WE PROVIDED THE

8   LISTS THAT YOUR HONOR ORDERED TO US PROVIDE.  AS YOUR HONOR

9   RECOGNIZED, IT WOULD TAKE -- THEY MAY NOT CAPTURE EVERYONE AT

10  THE TIME WE PROVIDED THEM, BUT WE PROVIDED EACH OF THE LISTS

11  THAT THE COURT DIRECTED US TO PROVIDE.

12         **MR. GELERNT:**  I AM NOT SURE WHY THE CONFUSION, BUT

13  WE DO NOT HAVE A LIST OF EACH INDIVIDUAL WHO WAS REUNITED AND

14  RELEASED OR REUNITED AND DETAINED.  WE HAVE AGGREGATE NUMBERS.

15         **THE COURT:**  OKAY.

16         **MR. STEWART:**  I WILL DOUBLE CHECK ON THAT, YOUR

17  HONOR.

18         **THE COURT:**  LET'S, THEN, GO TO THE PLAINTIFFS'

19  POSITIONS BEFORE WE CIRCLE BACK.  AND THAT IS, WHAT THE

20  PLAINTIFFS HAVE PROPOSED ARE A NUMBER OF DEADLINES TO PRODUCE

21  THESE LISTS.

22         MR. STEWART, DO YOU HAVE ANY OBJECTION TO THOSE

23  PROPOSED DEADLINES?  IN READING THEM THEY SEEMED REASONABLE,

24  AND IT IS THE TYPE OF INFORMATION THAT THE PLAINTIFFS OUGHT TO

25  HAVE AND OUGHT TO BE PROVIDED IN ORDER TO KEEP THE PROCESS

JULY 27, 2018

1    TRANSPARENT FOR ALL.

2           **MR. STEWART:**  YOUR HONOR, I THINK WE DO HAVE SOME

3    ISSUES WITH A NUMBER OF THE DEADLINES.  I THINK THE GLOBAL --

4    OUR GLOBAL PROPOSAL WOULD BE THAT THE PARTIES MEET AND CONFER

5    ABOUT THIS INFORMATION, AND SEE WHAT A REASONABLE TIMELINE

6    MIGHT BE.

7           MY CONCERN ON A NUMBER OF THESE ITEMS IS THAT THEY

8    CALL FOR A FAIRLY INTENSIVE MANUAL REVIEW, WHEREAS POCKETS MAY

9    BE LESS DIFFICULT TO PROVIDE, OTHER POCKETS WOULD ACTUALLY BE

10   QUITE BURDENSOME.

11          THE REUNIFICATION INFORMATION, I UNDERSTAND, IS

12   ESPECIALLY HARD TO DO JUST GIVEN THE GRANULARITY AND

13   SPECIFICITY.

14          SO I THINK A LOT OF THIS INFORMATION IT WOULD JUST

15   -- IT WOULD BE BETTER IT COULD, I THINK, SEE WHAT THE OPTIONS

16   ARE AND WHAT THE PARTIES CAN WORK OUT, AND IF THERE IS A

17   REASONABLE SCHEDULE TO MOVE FORWARD.  BECAUSE MY CONCERN WOULD

18   BE THAT WE END UP DETRACTING WHAT NEEDS TO BE A LOT OF JOINT

19   EFFORT TO COMPLETE THE REMAINING REUNIFICATIONS.  RECOGNIZING

20   THAT THERE IS AN IMPORTANCE FOR TRANSPARENCY AND INFORMATION,

21   I JUST WOULD BE CONCERNED THAT THERE IS VERY BURDENSOME DATA

22   EFFORTS THAT WOULD DETRACT FROM REUNIFICATION, YOUR HONOR.

23          **THE COURT:**  THE CLEAR FOCUS, THE INFORMATION YOU

24   WOULD LIKE RIGHT AWAY, IS THE PARENTS WHO HAVE BEEN REMOVED

25   WITHOUT THEIR CHILD.

JULY 27, 2018

```
1              MR. GELERNT:  THAT'S RIGHT, YOUR HONOR.

2          AND I THINK ALSO WE WERE EXPECTING ALREADY THE

3     NUMBER -- THE ITEM NO. 1 ON PAGE 10, THE LIST OF

4     REUNIFICATION, WHO HAS BEEN REUNIFIED AND WHERE -- WHETHER

5     THEY WERE PAROLED OR IN DETENTION.  SO WE FEEL LIKE MONDAY IS

6     MORE THAN REASONABLE SINCE THAT IS INFORMATION WE SHOULD HAVE

7     HAD ALREADY.  AND THEN, YOUR HONOR, YOU ARE ABSOLUTELY RIGHT,

8     THE DEPORTED PARENTS, WE REALLY NEED TO START LOOKING FOR

9     THEM.

10         BUT I WOULD ALSO SAY, ON THE CRIMINAL STUFF, I THINK

11    YOUR HONOR UNDERSTANDABLY BIFURCATED THE PROCESS AND SAID

12    ANYBODY WITH A CRIMINAL CONVICTION, EVEN IF NONSERIOUS, DIDN'T

13    HAVE TO BE -- WASN'T GOING TO BE IN THE CLASS FOR PURPOSES OF

14    THIS DEADLINE.  BUT I THINK, AS EVEN THE GOVERNMENT WOULD

15    PROBABLY ADMIT, SO THAT IS WHAT THEY DID, THEY TOOK OUT

16    EVERYONE.  BUT THERE ARE HUNDREDS OF PEOPLE WE BELIEVE -- WE

17    ACTUALLY DON'T KNOW HOW MANY, BUT WITH NONSERIOUS CRIMES THAT

18    CLEARLY ARE ENTITLED TO REUNIFICATION.  THAT PROCESS NEEDS TO

19    GO FORWARD.

20         SO I UNDERSTAND THE GOVERNMENT TO BE SAYING, AT

21    LEAST WITH RESPECT TO THAT, THERE MAY BE NEEDING TO BE SOME

22    MANUAL REVIEW.  BUT WE WOULD ASK THAT AT LEAST THE INFORMATION

23    COME ON A ROLLING BASIS.  THERE IS NO REASON FOR THEM TO WAIT

24    UNTIL THEY HAVE CRIMINAL HISTORY ABOUT EVERY SINGLE INDIVIDUAL

25    BEFORE THEY GIVE US ANY OF IT.
```

```
1           THE COURT:  I THOUGHT A LOT OF PARENTS WERE
2    REUNIFIED THAT HAD MINOR CRIMINAL HISTORY.
3           MR. STEWART:  THAT IS TRUE, YOUR HONOR.  AS MR.
4    GELERNT IS AWARE, WE HAVE NOT CATEGORICALLY EXCLUDED PEOPLE
5    WITH CRIMINAL CONVICTIONS.  WE HAVE BEEN VERY CAREFUL AND
6    OVER-INCLUSIVE ABOUT REUNIFYING THOSE PEOPLE.
7           I WOULD ALSO ADD, YOUR HONOR, THAT WE HAVE GIVEN THE
8    ACLU THE LIST OF REMOVED PARENTS ALREADY.  WE ALSO GAVE THEM
9    INFORMATION ABOUT REUNIFICATION THAT WE HAD AS OF WEDNESDAY.
10   AND WE HAVE ALSO GIVEN THEM A LIST OF PEOPLE WHO, TO THE BEST
11   OF OUR KNOWLEDGE AT THE TIME, HAD BEEN KNOCKED OFF OF CLASS
12   MEMBERSHIP BECAUSE OF CRIMINAL CONVICTIONS.
13          I WOULD PROPOSE AS TO THAT SPECIFICALLY THAT IF MR.
14   GELERNT, HAVING SEEN OUR GOOD FAITH EFFORTS TO NOT NEEDLESSLY
15   EXCLUDE SOMEBODY WITH A CRIMINAL CONVICTION, HE COULD REVIEW
16   OUR INFORMATION.  IF HE HAS CONCERNS ABOUT ANYONE OR REASONS
17   TO DOUBT THAT WE HAVE MADE THE RIGHT DECISION IN A PARTICULAR
18   CASE HE COULD CONFER WITH US INSTEAD OF, YOU KNOW, MAKING
19   ANOTHER ONEROUS DATA DEMAND THAT POTENTIALLY WILL HINDER THE
20   VERY IMPORTANT REUNIFICATION EFFORTS THAT WE HAVE UNDERWAY.
21          MR. GELERNT:  YOUR HONOR, ON THE CRIMINAL
22   CONVICTIONS WE HAVE NO IDEA.  I THINK EVERYONE IS ASKING US
23   WHERE THEY HAVE DRAWN THE LINE BETWEEN SERIOUS AND NONSERIOUS.
24   SO THAT IS ALL WE ARE SAYING, WE NEED MORE INFORMATION TO
25   KNOW.  WE ARE OBVIOUSLY NOT GOING TO ALLOW THEM TO
```

JULY 27, 2018

1    UNILATERALLY DRAW THAT LINE.  SO THAT IS ALL WE NEED TO KNOW

2    IS WHERE THEY HAVE DRAWN THE LINE AND WHAT ARE THE CRIMINAL

3    CONVICTIONS FOR THOSE INDIVIDUALS THAT THEY HAVE DECIDED NOT

4    TO REUNIFY BY THE DEADLINE.  THAT IS ALL I AM SAYING.

5            THE LIST OF REUNIFIED PARENTS WE ABSOLUTELY HAVE NOT

6    GOT THAT.  WE HAVE GOTTEN AGGREGATE NUMBERS, WE DON'T KNOW WHO

7    HAS BEEN REUNIFIED AND WHETHER THEY HAVE BEEN PAROLED OR

8    DETAINED.  SO THAT IS ALL WE ARE SAYING.

9            AND FOR DEPORTED PARENTS I THINK, AS THE GOVERNMENT

10   KNOWS, WE ARE JUST ASKING FOR AS MUCH INFORMATION AS POSSIBLE.

11   UNLESS THE GOVERNMENT IS GOING TO TELL US, WE WILL FIND ALL

12   400-PLUS OF THOSE PARENTS, IT IS GOING TO FALL ON THE NGO'S.

13   SO WE JUST NEED EVERY BIT OF PIECE OF INFORMATION THEY CAN

14   GIVE US.  AND WE WILL TAKE IT ON A ROLLING BASIS, BUT WE WOULD

15   JUST START -- WE WOULD JUST WANT TO START LOOKING.

16           **MR. STEWART:**  YOUR HONOR, I HAVE TO JUMP IN HERE.

17           WE HAVE GIVEN THEM, THE ACLU, A FULSOME, THOROUGH

18   LIST OF REMOVED PARENTS.  468.

19           MR. GELERNT REPEATEDLY REPRESENTS TO THIS COURT THAT

20   HE IS WILLING TO WORK WITH US TO GET NGO'S TO FIND PEOPLE, HE

21   REPRESENTS THAT HE HAS PEOPLE ON THE GROUND THAT ARE WILLING

22   TO HELP WITH THAT; WE HAVE YET TO SEE THOSE EFFORTS

23   MATERIALIZE.  SO WE ARE DOING THE BEST WE CAN TO GIVE MASSIVE

24   AMOUNTS OF INFORMATION IN AN GOOD FAITH JOINT EFFORT TO

25   ADDRESS THE CHALLENGING TASK HERE.  IT IS JUST SIMPLY NOT TRUE

```
1   THAT WE HAVE NOT GIVEN HIM TREMENDOUS INFORMATION.

2           MY PROPOSAL HERE, YOUR HONOR, WOULD BE THAT THE

3   PARTIES CONFER CAREFULLY, SEE IF THEY CAN -- WHAT THEY CAN

4   RESOLVE AND WHAT THEY CAN'T ON SOME OF THESE DISCOVERY

5   ISSUES -- NOT DISCOVERY, PARDON ME, YOUR HONOR --

6   INFORMATIONAL DATA ISSUES.  AND THEN IF THERE ARE REMAINING

7   DISPUTES WE CAN CLEARLY PRESENT THEM FOR YOUR HONOR FOR

8   RESOLUTION.

9           THE COURT:  SO IT IS YOUR POSITION THAT OF THE

10  NUMBER THAT ARE OUTSIDE THE UNITED STATES, THE 431, YOU HAVE

11  GIVEN A LIST?

12          MR. STEWART:  WE HAVE GIVEN THE LIST WE KNOW.  IT IS

13  A LITTLE LONGER THAN 431, AND I BELIEVE 468, AND WE ARE TRYING

14  TO RECONCILE THAT, YOUR HONOR.  BUT THE POINT IS, WE ARE

15  TRYING TO GIVE THE BEST INFORMATION WE HAVE.  WE HAVE GIVEN A

16  RATHER FULSOME LIST, WHICH I BELIEVE ALSO INCLUDES -- I

17  BELIEVE INCLUDES REASONS, YOU KNOW, LIKE CHOICES THAT WERE

18  MADE.  SORRY, I MAY BE THINKING OF THE ELECTION FORM.  BUT,

19  YES, WE HAVE GIVEN A LIST OF 468 TO MR. GELERNT.

20          THE COURT:  THAT INCLUDES THE COUNTRY OF REMOVAL,

21  WHEN, AND WHERE THEY WERE TAKEN?

22          MR. STEWART:  IT DOES.  IT INCLUDES THE BEST

23  INFORMATION WE HAVE ON REMOVAL DATES, COUNTRY, AND ARREST

24  DATES, AND NAMES.  AND I BELIEVE A-NUMBERS AS WELL, IF I

25  RECALL CORRECTLY.
```

JULY 27, 2018

1          **THE COURT:**  MR. GELERNT.

2          **MR. GELERNT:**  YOUR HONOR, I AM NOT SURE WHAT THE

3     GOVERNMENT MEANS ABOUT US PROVIDING THE NGO INFORMATION.  WE

4     ARE OUT THERE SEARCHING, WE HAVE FOUND SOME.  WE ARE NOT GOING

5     TO FIND THEM ALL WITHOUT ADDITIONAL INFORMATION.  I AM NOT

6     SURE WHY THE GOVERNMENT DOESN'T WANT TO GIVE US ADDITIONAL

7     INFORMATION.

8          WHAT WE HAVE NOW IS WHERE THEY ARE SENT, WHEN THEY

9     WERE SENT.  BUT ANY CONTACT INFORMATION THE GOVERNMENT HAS,

10    ANY NOTES THEY TOOK, I HAVE -- YOU KNOW, THIS PERSON HAS AN

11    AUNT.  WE WILL TAKE ANYTHING, BUT WE JUST WANT THE HELP.  SO I

12    THINK THAT IS ALL WE ARE SAYING.

13         THE GOVERNMENT'S COUNSEL, I DON'T KNOW WHAT HE MEANS

14    BY FULSOME, BUT WE WILL TAKE EVERYTHING THEY HAVE.

15         **MR. STEWART:**  THIS IS A CHART WITH ABOUT, AS I

16    RECALL, YOUR HONOR, ABOUT EIGHT COLUMNS OF INFORMATION.  IT IS

17    ON 460-SOME PEOPLE THAT WE GAVE TO THEM TWO DAYS AGO.

18         SO I AM GOING TO STAND VERY FIRM THAT THE GOVERNMENT

19    HAS WORKED VERY, VERY HARD AND PUT IN TREMENDOUS HOURS TO GIVE

20    MR. GELERNT THE INFORMATION THAT HE SAYS HE DOES NOT HAVE.

21         **MR. GELERNT:**  I DON'T WANT TO BELABOR THIS.  WE ARE

22    REALLY NOT CONCERNED WITH HOW HARD -- I CAN SEE THAT COUNSEL

23    IS TRYING TO MAKE A RECORD HERE, A PUBLIC RECORD, ABOUT HOW

24    HARD THEY HAVE WORKED AND THEIR GOOD FAITH.  WE ARE NOT REALLY

25    CONCERNED WITH THAT, WE ARE JUST CONCERNED WITH FINDING THESE

JULY 27, 2018

1   PARENTS AND REUNITING.

2          SO WE WILL JUST ASK FOR EVERY PIECE OF INFORMATION

3   THE GOVERNMENT HAS, BEYOND THE SORT OF COUNTRY THEY WERE SENT

4   TO, THE DATE THEY WERE SENT.  ANYTHING THEY HAVE WHEN THEY DO

5   EXIT INTERVIEWS OR ANYTHING LIKE THAT.

6          **THE COURT:**  SO WHAT YOU DON'T HAVE IS THE MORE

7   SPECIFIC INFORMATION.

8          **MR. GELERNT:**  EXACTLY, YOUR HONOR.  BECAUSE IT IS

9   HARD FOR -- I MEAN, WE HAVE NGO'S IN CENTRAL AMERICA LOOKING,

10  BUT ANY LITTLE PIECE OF INFORMATION THEY CAN HAVE.  THIS IS AN

11  AUNT IN AMERICA, SOMEBODY WE CAN CALL.

12         WE ARE LOCATING PEOPLE, SLOWLY.  AND NOW THAT WE

13  HAVE PASSED THIS DEADLINE WE ARE GOING TO BRING TO THE

14  GOVERNMENT'S ATTENTION, THIS IS WHO WE FOUND.

15         I THINK IT IS GOING TO BE TOUGH FOR US TO FIND ALL

16  400-PLUS WITHOUT MORE SPECIFIC INFORMATION.

17         **THE COURT:**  HOW MANY HAVE YOU FOUND?

18         **MR. GELERNT:**  YOUR HONOR, WE DO NOT KNOW BECAUSE WE

19  HAVEN'T BEEN ABLE TO CENTRALIZE IT NOW.  IT IS SO MANY

20  DIFFERENT NGO'S BOTH ABROAD AND HERE WE ARE NOT SURE HOW MANY

21  WE HAVE FOUND AT THIS POINT.  I DON'T THINK WE HAVE MADE A

22  REAL DENT, BUT WE DEFINITELY HAVE SOME PARENTS, THEY WANT TO

23  BE REUNIFIED AND THEY ARE READY TO HAVE THEIR CHILD BACK.

24         **THE COURT:**  OKAY.  AND WITH THOSE YOU ARE WORKING ON

25  OBTAINING TRAVEL DOCUMENTS FOR THE CHILDREN?

JULY 27, 2018

1          **MR. GELERNT:**  WE ARE GOING TO HAVE TO GO TO THE

2     GOVERNMENT THEN BECAUSE I THINK THE GOVERNMENT IS GOING TO

3     HAVE TO BE INVOLVED IN THE PROCESS OF TRAVEL DOCUMENTS.  I

4     THINK FOR SOME THERE MAY ALREADY BE TRAVEL DOCUMENTS AND THERE

5     IS LOGISTICS REMAINING, BUT WE WILL ULTIMATELY HAVE TO GO TO

6     THE GOVERNMENT TO WORK ON TRAVEL DOCUMENTS, BECAUSE I THINK

7     THAT IS MORE OF AN OFFICIAL THING.

8          **THE COURT:**  MR. STEWART, DO YOU KNOW WHETHER THE

9     GOVERNMENT HAS LOCATED ANY OF THESE INDIVIDUALS?

10         **MR. STEWART:**  I DON'T KNOW WHERE THINGS KIND OF

11    STAND THERE, YOUR HONOR.  I THINK THE LATEST ISSUES THAT MR.

12    GELERNT WAS GETTING INTO, THAT IS ACTUALLY I DID WANT TO RAISE

13    WITH THE JOINT EFFORT TO COMPLETE REUNIFICATIONS, ESPECIALLY

14    OF THE FOLKS ABROAD.

15         AND THE POINT OF EMPHASIS I WOULD SAY THERE IS THAT

16    OUR PROPOSAL IS ESSENTIALLY, YOU KNOW, LOOK, WE WANT TO MOVE

17    THAT AS SWIFTLY AS POSSIBLE.  AND IT IS GOING TO REQUIRE QUITE

18    A BIT OF JOINT EFFORT BETWEEN THE PARTIES TO MAKE IT HAPPEN

19    JUST BECAUSE, YOU KNOW, THESE ARE REPRESENTED FOLKS AND, YOU

20    KNOW, MR. GELERNT AND HIS COLLEAGUES ARE GOING TO NEED TO BE

21    THE ONES FINDING OUT THEIR WISHES.  AND WE NEED TO BE A LITTLE

22    CAREFUL ABOUT THAT, BUT WE HAVE TO, YOU KNOW, FIGURE OUT THE

23    MANY LOGISTICAL THINGS.

24         SO WE STAND READY TO DO THAT AND TO WORK ON THAT.

25    AND I DON'T -- BUT I DON'T KNOW IF HEAVY MANUAL DATA

```
1   PRODUCTION IS GOING TO BE THE BEST WAY TO GO ABOUT THAT.  I
2   WOULD PROPOSE THAT THE PARTIES GET TOGETHER AND JUST --
3           THE COURT:  DO YOU HAVE EXTRA INFORMATION, SO, FOR
4   EXAMPLE, IF YOU HAVE PARENT A WHO WAS REMOVED AND THEY WERE
5   REMOVED TO HONDURAS ON A DATE CERTAIN TO A SPECIFIC LOCATION,
6   DOES THE GOVERNMENT HAVE OTHER INFORMATION THAT, FOR EXAMPLE,
7   PARENT A HAD A RELATIVE, HAD A HOME ADDRESS, OR ANY FURTHER
8   IDENTIFYING INFORMATION THAT WOULD BE HELPFUL IN LOCATING THAT
9   PERSON?  I ASSUME IT DOES.
10          MR. STEWART:  MY GUESS, IT WOULD JUST DEPEND ON THE
11  PERSON, YOUR HONOR.  BUT, AGAIN, I THINK THAT'S -- THAT'S THE
12  SORT OF THING THAT'S BEST ACHIEVED THROUGH A JOINT EFFORT.
13          ONE THING THAT IS CLEAR, WHATEVER ELSE WE DISAGREE
14  ON, IS THE GOVERNMENT WANTS TO REUNIFY FAMILIES WHO ARE
15  ELIGIBLE FOR REUNIFICATION.  AND THE MOST KIND OF SEAMLESS
16  EFFECTIVE WAY TO DO THAT IS -- WOULD BE, YOU KNOW, CONSISTENT
17  WITH LAW WOULD BE THE PREFERENCE.  AND I AM NOT SURE THAT SORT
18  OF A HARDLINE RULE ABOUT PRODUCING A CERTAIN THING AT A
19  CERTAIN TIME WILL BE MOST EFFICACIOUS TO THAT SHARED GOAL,
20  YOUR HONOR.
21          THE COURT:  YOU ARE INDICATING THAT THE MORE
22  INFORMATION YOU CAN PROVIDE TO PLAINTIFFS WOULD BE IN THE BEST
23  INTEREST, BECAUSE IT SEEMS BOTH SIDES HAVE ENORMOUS RESOURCES.
24  THE GOVERNMENT CERTAINLY DOES.  AND WHEN MR. GELERNT TALKS
25  ABOUT THE PEOPLE ON THE GROUND, THERE IS EVERY REASON TO
```

JULY 27, 2018

1    BELIEVE THAT THAT INFRASTRUCTURE IS IN PLACE.  AND SO THE MORE

2    INFORMATION BOTH PARTIES HAVE THE MORE QUICKLY IDENTIFICATION

3    AND LOCATION --

4            MR. GELERNT:  YOUR HONOR, I JUST -- JUST FOR A MORE

5    SPECIFIC ANSWER TO YOUR QUESTION ABOUT SORT OF DOES THE

6    GOVERNMENT HAVE MORE INFORMATION.  THERE IS ALWAYS A-FILES FOR

7    EACH INDIVIDUAL.  THE GOVERNMENT SHOULD BE TURNING OVER THE

8    A-FILES AT LEAST AND LET US SEE, OH, OKAY, WE KNOW THIS AUNT,

9    THOSE TYPES OF THINGS.  THOSE CAN BE CATEGORICAL.  WE CAN WORK

10   WITH THE GOVERNMENT ON, IS THERE SOMETHING MORE SPECIFIC

11   OUTSIDE OF THE A-FILE THAT CAN HELP US.  BUT I THINK GIVEN

12   GOVERNMENT COUNSEL SAYING THEY WANT TO DO EVERYTHING TO HELP

13   US, I THINK THAT WOULD BE ONE STEP.

14           MR. STEWART:  THE A-FILES WOULD POTENTIALLY PUT THIS

15   EFFORT BEHIND BY -- WOULD STRETCH IT ON FOR A MATTER OF

16   MONTHS, YOUR HONOR.

17           AS MR. GELERNT KNOWS, BECAUSE WE ARE OPPOSING

18   COUNSEL IN ANOTHER CASE INVOLVING MASS PRODUCTION OF A-FILES,

19   A-FILE PRODUCTION, IT IS AN EXTREMELY DIFFICULT TASK TO

20   COMPILE A-FILES.  THERE IS A LOT OF PROTECTED INFORMATION THAT

21   WE NEED TO BE VERY CAREFUL ABOUT.  IT IS A MONUMENTAL TASK AND

22   ALL IT WOULD DO IS GUARANTEE MASSIVE, MASSIVE DELAY.  AND

23   DELAY IN PARTICULAR IN REUNIFICATIONS BECAUSE SO MANY PEOPLE

24   WHO ARE WORKING ON THAT ARE THE PEOPLE WHO ARE WORKING TO

25   REUNIFY THESE FAMILIES.

JULY 27, 2018

1      **MR. GELERNT:**  YOUR HONOR, I MEAN, I JUST HAVE TO

2  REITERATE.  THERE SHOULDN'T BE A FINITE NUMBER OF PEOPLE

3  WORKING ON IT.

4      I GUESS, YOUR HONOR, WANTED TO SAY IS, YOU ASKED

5  DOES THE GOVERNMENT HAVE OTHER INFORMATION?  THEY ABSOLUTELY

6  DO.  THEY CAN JUST PULL THE FILE.  SO EVEN IF THEY WANTED TO

7  SAY, HEY, HERE WAS THE LAST KNOWN ADDRESS OR HERE IS AN AUNT.

8      I MEAN, I THINK WHAT THE GOVERNMENT IS BASICALLY

9  ADMITTING IS YES, WE DO HAVE INFORMATION BUT WE JUST WANT TO

10  MOVE AT OUR OWN PACE.

11      ALL WE ARE ASKING IS THAT WE TRY AND SET SOME

12  DEADLINES SO IT DOESN'T JUST SORT OF LINGER.

13      **THE COURT:**  MR. GELERNT, WHILE I HAVE YOU UP, LET ME

14  MOVE TO A SLIGHTLY DIFFERENT ISSUE, AND THAT'S THE REQUEST FOR

15  INJUNCTION, THE SEVEN-DAY PERIOD.

16      AS A PRACTICAL MATTER, HASN'T THERE BEEN -- THERE

17  HAS BEEN TEN DAYS ALREADY.  AND MANY, MANY, I WOULD ASSUME THE

18  VAST MAJORITY OF THESE PARENTS HAVE ALREADY BEEN REUNIFIED AND

19  HAVE HAD PLENTY OF TIME TO MEET WITH THE CHILD'S ADVOCATE AND

20  BE COUNSELED.  AND ALL OF THE CONCERNS YOU HAD IT SEEMS LIKE,

21  AS A PRACTICAL MATTER --

22      **MR. GELERNT:**  WELL, YOUR HONOR, I DON'T THINK SO FOR

23  A FEW REASONS.  BUT I WANT TO SORT OF ACCEPT YOUR POINT

24  BECAUSE I THINK IT IS RIGHT, THAT IF THERE HAS BEEN A FAMILY

25  WHO IS IN DETENTION AND HAS BEEN GETTING THIS COUNSELING FOR

```
 1    SEVEN DAYS, THEN THAT'S A FAMILY THAT WE CAN SAY, WELL, THEY
 2    HAVE HAD THEIR SEVEN DAYS.
 3            BUT I THINK WHAT IS HAPPENING IS MANY OF THE
 4    FAMILIES WHO ARE NOW BEING DETAINED HAVE BEEN DETAINED IN THE
 5    LAST FEW DAYS, SO THEY HAVEN'T HAD NEARLY THAT MUCH TIME.
 6            THE OTHER POINT IS THAT WHAT WE ARE HEARING FROM THE
 7    DETENTION CENTERS -- BECAUSE THERE ARE BASICALLY TWO GROUPS
 8    THAT RUN THE DETENTION CENTERS, SO THEY HAVE BEEN STAFFING IT
 9    FOR YEARS, THEY DON'T GET NOTICE OF THE FAMILY COMING THAT
10    THIS IS A REUNIFIED FAMILY COMING.  THEY COULD BE ANYWHERE IN
11    THE DETENTION CENTER.
12            WHAT THEY ARE TELLING US, AND I THINK THE AFFIDAVITS
13    SHOW, IS THAT THEY ARE LEARNING THAT THIS REUNIFIED FAMILY
14    SHOWED UP BECAUSE OTHER DETAINEES ARE TELLING THEM, HEY, THERE
15    IS THIS FAMILY THAT JUST CAME, AND THEY ARE NEW.
16            SO WHAT WE HAVE PROPOSED IS THAT IT BE SEVEN DAYS
17    FROM WHEN WE GET NOTICE OF REUNIFICATION.
18            NOW, IF WE GET A LIST FROM THE DETENTION CENTERS,
19    THESE ARE THE REUNIFIED FAMILIES WE HAVE BEEN WORKING WITH AND
20    THIS IS THE NUMBER OF DAYS THAT WE HAVE BEEN WORKING WITH
21    THEM, YOUR HONOR COULD CERTAINLY TAKE THAT INTO ACCOUNT.
22            BUT I THINK THERE ARE FAMILIES THAT JUST SHOWED UP
23    YESTERDAY AND THE DAY BEFORE, AND THAT MIGHT BE THE BULK OF
24    THEM, THEY HAVE NOT NEARLY HAD ANY TIME TO CONSULT.  THE
25    PEOPLE ON THE GROUND MAY NOT EVEN KNOW THEY ARE THERE.
```

JULY 27, 2018

```
1              SO I THINK, AS A PRACTICAL MATTER, WE BELIEVE IT IS
2    VERY MUCH NECESSARY.  AND I THINK, AS THE AFFIDAVITS SHOWED,
3    WHETHER THE REUNIFICATIONS ARE HAPPENING OR NOT, THE ABILITY
4    TO COUNSEL THESE INDIVIDUALS IS VERY DIFFICULT.  IT IS VERY
5    CLEAR THAT INDIVIDUALS HAVE WAIVED AWAY THEIR RIGHT TO A
6    CHILD, AND HAVE HAD NO IDEA AND ARE SHOCKED.
7              I MEAN, THE TRAUMA THAT IS GOING ON IS AMAZING.  AND
8    MAYBE I AM PERSONALIZING THIS TOO MUCH, BUT IT FEELS ALMOST
9    LIKE IT WOULD BE TORTUROUS TO HAVE A PARENT BE THINKING THE
10   REST OF THEIR LIFE, I GAVE AWAY MY CHILD BECAUSE I WAS
11   CONFUSED AND IT WAS MY MISTAKE.
12             I MEAN, THEY ARE GOING TO GO BACK TO THEIR HOME
13   COUNTRIES NOW AND PEOPLE ARE GOING TO ASK, WHERE IS YOUR
14   DAUGHTER?  WHERE IS YOUR SON?
15             AND THEY ARE GOING TO BE HAVING TO SAY, WELL, I WAS
16   CONFUSED AND I DIDN'T UNDERSTAND.
17             AND SOME OF THESE PEOPLE ARE ILLITERATE, THEY ARE
18   SPEAKING INDIGENOUS LANGUAGES.  I THINK THE AFFIDAVITS --
19   THERE ARE SO MANY AFFIDAVITS SHOWING THAT PEOPLE DID NOT
20   UNDERSTAND THEIR RIGHTS.  THE ABILITY TO COUNSEL THEM IS JUST
21   SO COMPLEX.
22             THE COURT:  THAT NUMBER, THOUGH, IS VERY SMALL,
23   ISN'T IT?  BECAUSE THE GOVERNMENT HAS IDENTIFIED 120 WHERE
24   PARENTS HAVE OSTENSIBLY WAIVED REUNIFICATION.  OF THAT 120 YOU
25   HAVE IDENTIFIED ABOUT 43 OR SO IN THE AFFIDAVITS.
```

JULY 27, 2018

```
 1              MR. GELERNT:  I THINK 27, YOUR HONOR, BUT I COULD BE
 2    MISTAKEN.  27.  BUT WE WOULD OBVIOUSLY LIKE TO TALK TO ALL OF
 3    THEM.
 4              BUT SO I THINK THAT IS ONE ISSUE.
 5              ONE THING I WOULD JUST BRING UP THAT WE DIDN'T GET A
 6    CHANCE TO GO THROUGH.  OUR VIEW OF THE NUMBERS IS WE ARE NOT
 7    REALLY SURE.  IT WAS 206 BEFORE THAT THE GOVERNMENT SAID HAD
 8    WAIVED, NOW IT IS 120.  WE ARE NOT SURE HOW THAT REDUCTION
 9    OCCURRED FROM 206 TO 120.
10              I TAKE THEIR POINT THAT THERE APPEARS TO BE A FINITE
11    NUMBER OF PEOPLE WHO HAVE WAIVED THE REUNIFICATION, SO AT A
12    MINIMUM I THINK WE NEED TO TALK TO THEM.
13              THE COURT:  ISN'T THAT, THOUGH, A RELATIVELY EASY
14    FIX?  SO IF YOU IDENTIFY THAT RELATIVELY SMALL NUMBER OF
15    INDIVIDUALS WHO ARE CLAIMING THEY MADE A MISTAKE, THEY DIDN'T
16    MEAN TO SEPARATE.
17              MR. GELERNT:  RIGHT.
18              THE COURT:  THEY CAN BE -- THEY CAN BE REUNIFIED.
19    THEY CAN BE IDENTIFIED AND REUNIFIED.  AND THEN IF THEY ARE
20    SUBJECT TO A REMOVAL ORDER, REMOVED TOGETHER.
21              MR. GELERNT:  THAT IS ABSOLUTELY RIGHT, YOUR HONOR.
22    SO THAT PRESUMES THAT WE CAN GET TO ALL OF THOSE INDIVIDUALS
23    BEFORE THEY ARE REMOVED, BECAUSE THE GOVERNMENT'S PLAN, AS YOU
24    KNOW, WAS TO NOT EVEN BRING THE CHILD THERE, IT WAS JUST TO
25    REMOVE THE PARENT BASED ON THE WAIVER OF REUNIFICATION.  SO AT
```

JULY 27, 2018

```
 1    A MINIMUM THE CHILD WOULD HAVE TO COME AND THERE WOULD HAVE TO

 2    BE A REEXAMINATION GIVEN THAT THE ONES WE HAVE ALREADY REACHED

 3    HAVE SAID THEY DIDN'T KNOW THAT WAS GOING ON.

 4           THE COURT:  IF YOU IDENTIFY THEM, THEN THEY CAN BE

 5    CARVED OUT AND THEN REUNIFIED.  AND THEN THE PROCESS ADDRESSES

 6    ITSELF WITHOUT FURTHER RELIEF BEING NECESSARY.

 7           MR. GELERNT:  YOUR HONOR, I THINK WE WOULD TALK TO

 8    THE PARENTS BECAUSE MAYBE THERE ARE A COUPLE THAT UNDERSTOOD

 9    AND MAYBE WE DON'T HAVE TO BRING THE CHILD HERE BECAUSE THAT

10    WOULD TRAUMATIZE THE CHILD IF THEY WERE TO MAKE THE DECISION.

11    BUT AS LONG AS WE CAN TALK TO THEM.

12           THE ONE POINT I WANTED TO MAKE BEYOND THOSE, YOUR

13    HONOR, IS WE BELIEVE WE NEED THE SEVEN DAYS EVEN FOR A PARENT

14    WHO SAID THEY WANTED TO BE REUNIFIED.  AND THAT IS BECAUSE OF

15    THE DECISIONS THEY HAVE TO MAKE AS A FAMILY NOW, ABOUT WHETHER

16    TO LEAVE THE CHILD BEHIND.

17           BECAUSE THE REUNIFICATION WAS SO NOW THAT THEY CAN

18    MAKE THIS DECISION TOGETHER.  MANY PARENTS NOW WILL BE TOLD,

19    YOU KNOW, YOU MAY NOT WIN YOUR CASE BUT YOUR CHILD MIGHT, DO

20    YOU WANT TO LEAVE YOUR CHILD BEHIND, DO YOU BOTH WANT TO

21    FIGHT?

22           JUST AS AN ASIDE.  YOUR HONOR, THE IDEA THAT THERE

23    IS NO APPEALS, THAT IS THE GOVERNMENT'S VERSION OF THE

24    EXPEDITED REMOVAL.  I ARGUED A CASE IN MAY THAT IS PENDING

25    BEFORE THE NINTH CIRCUIT ABOUT THE EXTENT TO WHICH THERE HAS
```

JULY 27, 2018

TO BE HABEAS CORPUS OVER THESE EXPEDITED REMOVALS.  JUST PUT A
PIN IN THAT, BUT THAT IS OBVIOUSLY GOING TO BE DECIDED BY THE
NINTH CIRCUIT ANY DAY.

SO THOSE INDIVIDUALS NEED TO BE THE COUNSELED.  AND
I THINK THAT IS WHAT THE PEOPLE ON THE GROUND ARE SAYING IS
THEY JUST DIDN'T UNDERSTAND, MAYBE MY CHILD CAN STAY BY
HIMSELF AND HAS A CLAIM, MAYBE HE SHOULDN'T.  MAYBE WE CAN
BOTH FIGHT.

AND I THINK THOSE INDIVIDUALS, AFTER THIS MANY
MONTHS OF THE SEPARATION, NOW FOR THE GOVERNMENT NOT TO GIVE
SEVEN DAYS TO ALLOW THESE FAMILIES TO FIGURE IT OUT.  BECAUSE
THE CHILD NOW HAS THIS WHOLE SEPARATE CASE GOING THAT THEY
WOULDN'T NORMALLY HAVE HAD GOING, AND THEY NEED TIME TO
DECIDE.  I SAID I WANT TO SEE MY CHILD TO TALK, BUT NOW I AM
BEING ADVISED MAYBE MY CHILD SHOULD STAY BY HIMSELF, MAYBE HE
SHOULDN'T.  MAYBE WE SHOULD BOTH LEAVE, MAYBE WE SHOULD BOTH
FIGHT.

SEVEN DAYS -- I THINK WHAT THE PEOPLE ON THE GROUND
ARE SAYING IS SEVEN DAYS MAY NOT BE ENOUGH, BUT THAT IS WHAT
WE HAVE ASKED FOR NOW.

BUT I THINK IT IS NOT JUST THE PEOPLE WHO HAVE
WAIVED REUNIFICATION, IT IS ALL OF THESE PEOPLE NEED TO MAKE
THIS PROFOUND DECISION NOW ABOUT ARE THEY GOING TO CONTINUE TO
FIGHT OR ARE THEY JUST GOING TO LEAVE THEIR CHILD BEHIND TO
FIGHT.  IT IS A VERY COMPLEX DECISION.

JULY 27, 2018

1      AND AS THE PEOPLE ON THE GROUND ARE TELLING US, THE

2  FIRST DAY OR TWO IS A WASTE BECAUSE THE CHILDREN ARE

3  CATATONIC, THE PARENTS ARE JUST WEEPING.  EVERY ANSWER THE

4  PARENT GIVES IS WHETHER I AM GOING TO LOSE MY CHILD OR NOT.

5  THEY ARE JUST WEEPING.

6      THE TRAUMA IS SO MUCH WORSE THAN I THINK WE

7  REALIZED.  AND I THINK, YOU KNOW -- MAYBE THIS IS MY FAULT,

8  THE LAST FEW WEEKS HAVE OBVIOUSLY NECESSARILY HAD TO BE ABOUT

9  NUMBERS, AND MAYBE I SHOULD HAVE BEEN TALKING MORE ABOUT WHAT

10 IS GOING ON WITH THESE FAMILIES.

11     THE CHILDREN ARE BLAMING THE PARENTS FOR HAVING LEFT

12 THEM THERE IN THE DETENTION AS IF THE PARENT COULD HAVE GOT

13 THEM OUT.  THE CHILDREN ARE SHOWING UP HAVING LOST ENORMOUS

14 AMOUNT OF WEIGHT.  THE PARENTS ARE HAVING TROUBLE REUNITING

15 WITH THE CHILDREN.  THE CHILDREN WILL NOT LEAVE THE PARENT'S

16 SIDE, EVEN WHEN THE PARENT NEEDS TO TELL SOME INDELICATE

17 INFORMATION ABOUT THEIR ASYLUM CLAIM AND DOESN'T WANT THEIR

18 SIX OR SEVEN-YEAR-OLD TO HEAR.

19     YOU KNOW, I CANNOT EXPRESS STRONGLY ENOUGH WHAT WE

20 ARE HEARING FROM THE GROUND.  I THINK IT IS INDICATED IN THE

21 AFFIDAVITS THAT THEY NEED THIS TIME TO MAKE THIS PROFOUND

22 DECISION.

23     **THE COURT:**  WHAT ABOUT THE FACT THAT THERE WAS A

24 PROCESS IN PLACE, THERE WAS A NOTICE.

25     **MR. GELERNT:**  RIGHT.

JULY 27, 2018

1      **THE COURT:**  AND THE COURT ADOPTED THE NOTICE THAT

2  PLAINTIFFS PROPOSED AND THE GOVERNMENT AGREED TO.  AND THEN

3  THE COURT ADOPTED THE 48-HOUR NOTICE OVER THE GOVERNMENT'S

4  OBJECTION.  THAT, ISN'T IT, THE PERIOD OF TIME WHERE PARENTS

5  GET THE INFORMATION AND THEN MAKE THE DECISION WHETHER TO BE

6  REMOVED TOGETHER OR SEPARATE.

7      **MR. GELERNT:**  RIGHT, YOUR HONOR.  I HAVE TWO

8  RESPONSES TO THAT.

9      ONE, AS I THINK WE HAVE SAID BEFORE, BUT I JUST WANT

10  TO MAKE SURE I WAS CLEAR ABOUT IT IS, WE NEVER ANTICIPATED

11  THAT THE FORM WOULD BE GIVEN AND FORCED ON PEOPLE TO SIGN

12  BEFORE REUNIFICATION.  I THINK WE NEVER ANTICIPATED THAT

13  PEOPLE COULD MAKE THE DECISION REQUESTED OF THEM ON THE FORM

14  WITHOUT BEING WITH THEIR CHILD, BECAUSE IT IS A FAMILY

15  DECISION.

16      I THINK THE SECOND POINT I WOULD MAKE, YOUR HONOR,

17  IS WE HAD NO IDEA HOW THE FORM WAS GOING TO BE ADMINISTERED.

18  I THINK WHAT THE AFFIDAVITS SHOW IS THAT THERE IS MISLEADING

19  INFORMATION BEING GIVEN.  THERE IS SOME COERCION.  PARENTS ARE

20  NOT UNDERSTANDING WHAT IS GOING ON.

21      IN FACT, SOMETIMES THEY ARE -- I THINK A FEW

22  AFFIDAVITS INDICATE THAT THERE WERE GROUP PRESENTATIONS WHERE

23  PEOPLE HAD ONE TO FOUR MINUTES IN A GROUP OF 30 TO 50 PEOPLE

24  TO MAKE THIS DECISION.

25      I MEAN, I WOULD GATHER THAT EVERYONE IN THIS

JULY 27, 2018

```
1   COURTROOM HAS TAKEN LONGER TO FIGURE OUT WHAT THEY WANT TO
2   ORDER FROM A MENU, THAN ONE TO FOUR MINUTES ABOUT, THIS IS
3   YOUR LIFE AT STAKE AND YOUR CHILD'S LIFE AT STAKE.
4           IN A GROUP PRESENTATION WITH PEOPLE SAYING THEY
5   DIDN'T HAVE THEIR GLASSES TO READ.  INDIGENOUS LANGUAGE.  THE
6   TRAUMA WAS SO GREAT.
7           I THINK WE ALWAYS ASSUMED THAT THE PARENTS WOULD
8   HAVE THEIR CHILD WITH THEM AND THEY WOULD AT LEAST TALK AND
9   SAY, IF I AM GOING TO LEAVE YOU BEHIND HERE IN THE UNITED
10  STATES I NEED TO LOOK YOU IN THE EYE AND TELL YOU, THIS IS
11  WHAT WE ARE GOING TO DO AS A FAMILY.
12          SO I THINK THAT IS WHERE WE ARE.  WE ASSUMED THE
13  FORM WOULD BE GIVEN -- THAT WHEN THEY HAD TO SIGN THE FORM IT
14  WOULD BE AFTER REUNIFICATION.  AND THAT WE ALSO ASSUMED THAT
15  THERE WOULDN'T BE THESE KINDS OF HORRENDOUS PROBLEMS ON THE
16  GROUND WITH THE ADMINISTRATION OF THE FORM.
17          THE COURT:  ON THE NOTICE, PAGE 2 OF THE NOTICE IS
18  WHAT IS GIVEN TO PARENTS WITH A REMOVAL ORDER.  AM I CORRECT?
19          MR. GELERNT:  THAT WOULD HAVE BEEN OUR UNDERSTANDING
20  WITH THE REMOVAL ORDER.  AND IT SHOULD HAVE BEEN TRANSLATED.
21  IT DOESN'T APPEAR THAT IT HAS ALWAYS BEEN TRANSLATED.
22          AT THE END OF THE DAY, YOUR HONOR, I THINK, YOU
23  KNOW, THE UNITED STATES GOVERNMENT SHOULD WANT TO GET THIS
24  RIGHT AT THIS POINT.  I MEAN, THEY CREATED THIS SEPARATION
25  POLICY.
```

JULY 27, 2018

1           AT THIS POINT I CANNOT SEE IT BEING IN THE

2    LEGITIMATE INTEREST OF THE UNITED STATES GOVERNMENT TO HAVE

3    FAMILIES NOT HAVE TIME TO MAKE THIS DECISION.  AND TO HAVE

4    PARENTS ALL OVER THE WORLD HAVING LEFT THEIR CHILDREN BY

5    MISTAKE, OR TO HAVE MADE THE WRONG DECISION AND NOT UNDERSTOOD

6    THAT THEIR CHILD MIGHT BE ABLE TO GET ASYLUM.

7           THIS IS, WE BELIEVE, A REASONABLE AMOUNT OF TIME,

8    AFTER THIS MANY MONTHS OF SEPARATION GOING ON WITHOUT THE

9    GOVERNMENT FIXING IT UNTIL THIS COURT DRAGGED THEM INTO FIXING

10   IT, FOR THIS FEW DAYS, WE BELIEVE IT IS APPROPRIATE.

11          WE DO TAKE YOUR POINT THAT IF A FAMILY WAS REUNITED

12   SEVEN DAYS AGO AND THEN THEY HAVE BEEN MEETING, YOU KNOW, THEY

13   ARE GOING TO HAVE HAD THEIR TIME.  BUT I DON'T THINK THAT IS

14   GOING TO BE TRUE FOR THE VAST BULK WHO HAVE JUST GOT TO THE

15   DETENTION CENTER, AND MAYBE THE PEOPLE ON THE GROUND DON'T

16   EVEN KNOW THEY ARE IN THE DETENTION THE CENTER YET.

17          **THE COURT:**  THIS NOTICE DOES PROVIDE, SO AT PAGE 2

18   THE NOTICE STATES THAT, CLEARLY, YOU DON'T HAVE TO AGREE TO

19   REMOVAL IN ORDER TO BE REUNIFIED.  EVEN IF YOU CONTINUE TO

20   FIGHT YOUR CASE THE GOVERNMENT MUST STILL REUNIFY YOU.

21          AND THEN IT GOES ON, IN BOLD, AND IT SAYS, IF YOU

22   LOSE YOUR CASE.

23          SO THESE ARE PEOPLE WHO HAVE LOST THEIR CASE, THEY

24   HAVE A REMOVAL ORDER.  AND THE GOVERNMENT IS GOING TO REMOVE

25   YOU, WHICH IT IS, YOU MUST DECIDE AT THAT TIME WHETHER YOU

JULY 27, 2018

1   WANT YOUR CHILD TO LEAVE THE UNITED STATES WITH YOU.

2          DOESN'T THAT TELL THEM?  SO THIS WOULD BE A PARENT

3   IN A FACILITY WHO HAS A REMOVAL ORDER, THEY ARE GETTING

4   REMOVED.  AS MUCH AS THEY MIGHT WANT TO BE HERE, THEY DON'T

5   HAVE THAT OPTION.  THE GOVERNMENT HAS EXERCISED ITS

6   DISCRETION, THE EXECUTIVE BRANCH, AND ORDERED REMOVAL.  THE

7   PARENT HAS THE NOTICE.  AND THE NOTICE SAYS, I HAVE TO DECIDE

8   NOW, DO I WANT TO REMOVE TOGETHER WITH MY CHILD OR SEPARATELY.

9          THAT'S REALLY THE ONLY ISSUE.

10         **MR. GELERNT:**  BUT, YOUR HONOR, I JUST -- YOU KNOW, I

11  CAN'T MAKE THIS POINT STRONGLY ENOUGH THAT THERE IS NO WAY TO

12  MAKE THAT DECISION ABOUT LEAVING YOUR CHILD BEHIND OR NOT

13  WITHOUT BEING TOGETHER.

14         I THINK WHAT THE AFFIDAVITS SHOW IS THAT IT WAS

15  VIRTUALLY IMPOSSIBLE TO COUNSEL PARENTS WHEN THEY WERE

16  SEPARATED BECAUSE THEY WERE CONSTANTLY BEING TRANSFERRED.

17  PHONE ACCESS WAS IMPEDED.

18         AND MOST IMPORTANTLY, THE NUMBER OF CONVERSATIONS A

19  PARENT WAS ABLE TO HAVE WITH THEIR CHILD WAS USUALLY ONE OR

20  TWO AND IT WAS FOR A FEW MINUTES, AND THE CHILD WAS JUST

21  CRYING THE WHOLE TIME.  AND THE PARENT WAS UNDERSTANDABLY

22  FOCUSED ON, ARE YOU EATING?  ARE YOU SLEEPING?  IS ANYBODY

23  BULLYING YOU?

24         THERE WAS SIMPLY NO WAY FOR THE PARENT AND CHILD TO

25  HAVE THAT KIND OF CONVERSATION BY PHONE.

JULY 27, 2018

```
 1              AND SO THIS ULTIMATE DECISION BY THE PARENT IS GOING
 2    TO AFFECT THE CHILD.  IT IS NOT JUST SIMPLY THAT THEY ARE
 3    SINGLE ADULTS HERE DECIDING, I'M GOING TO LEAVE OR NOT LEAVE.
 4    IT IS ULTIMATELY -- THESE ARE ALL FAMILY DECISIONS.
 5              AND GOING BACK TO YOUR FRAMEWORK, YOUR HONOR, ABOUT
 6    WHAT WOULD HAVE HAPPENED HAD THEY NOT BE SEPARATED.  WELL,
 7    THEY WOULD HAVE BEEN TOGETHER FOR ALL OF THESE DAYS AND WOULD
 8    HAVE BEEN TALKING ABOUT IT.  THEY WOULD HAVE HOPEFULLY SEEN AN
 9    ADVOCATE WHO WOULD HAVE SAID, YOU KNOW, MAYBE YOUR CHILD CAN
10    STAY.
11              BUT THAT WOULD HAVE BEEN A FAMILY DECISION TOGETHER
12    AND THEY WOULDN'T HAVE BEEN SO TRAUMATIZED THAT THE ABILITY TO
13    EVEN HAVE THE CONVERSATION WAS SO IMPEDED.
14              SO I THINK THIS IS AN ATTEMPT -- AND WITH VERY FEW
15    DAYS OF STAY OF REMOVAL.  I MEAN, I THINK PEOPLE ON THE GROUND
16    ARE REALLY BEGGING US TO GET MORE.  BUT AN ABILITY TO JUST LET
17    THE FAMILY BE BACK WHERE THEY WOULD HAVE BEEN TO MAKE THIS
18    DECISION TOGETHER.
19              THE COURT:  BUT UNDER THE LAW WHAT MATTERS IS THE
20    PARENT.  I MEAN, WHAT THIS CASE HAS ALWAYS BEEN ABOUT IS THE
21    DUE PROCESS RIGHT TO FAMILY INTEGRITY.
22              MR. GELERNT:  RIGHT.
23              THE COURT:  AND IT IS THE PARENT THAT MAKES THE
24    DECISIONS.  IN A PERFECT WORLD IT COULD BE A FAMILY DECISION,
25    BUT THE CHILD'S VIEW, UNDER THE LAW, DOESN'T MATTER.  IT IS
```

JULY 27, 2018

1    THE PARENT'S VIEW, ULTIMATELY, WHETHER TO REMOVE TOGETHER OR
2    SEPARATELY.
3              **MR. GELERNT:**  RIGHT, YOUR HONOR.
4              **THE COURT:**  SO I UNDERSTAND THE EMOTIONAL ARGUMENT
5    ABOUT THIS DECISION SHOULD BE MADE FACE TO FACE, BUT WHAT'S
6    THE LEGAL BASIS?
7              **MR. GELERNT:**  YOUR HONOR, ONE THING I WOULD SAY IS
8    THAT I THINK THAT CHILD ADVOCATES WOULD SAY THAT THE OLDER THE
9    CHILD THAT CHILD MAY HAVE SOME INDEPENDENT RIGHTS.  I JUST
10   WANT TO PUT THAT OUT THERE NOW.
11             BUT BEYOND THAT, YOUR HONOR, I THINK THE PARENT MAY
12   ULTIMATELY MAKE THE DECISION IN MOST CASES, ALMOST ALL THE
13   CASES.  BUT I DON'T THINK ANY PARENT MAKES THIS KIND OF
14   PROFOUND DECISION WITHOUT DISCUSSING IT WITH THEIR CHILD.
15             THEY DON'T JUST SIMPLY SAY, BY THEMSELVES, MY
16   EIGHT-YEAR-OLD IS STAYING HERE BY HIMSELF.  I AM NOT GOING TO
17   SEE HIM.  I AM SAYING, I AM GOING, YOU KNOW, HAVE A GOOD LIFE.
18             THEY HAVE NOT SPOKEN.
19             I DON'T THINK THERE IS ANY ABILITY -- I DON'T THINK
20   THE PARENT CAN MAKE THAT KIND OF DECISION WITHOUT LOOKING HIS
21   CHILD IN THE EYE AND SAYING, DO YOU WANT TO TRY TO STAY HERE?
22   DO YOU WANT TO TRY AND BUILD A LIFE HERE BY YOURSELF?  I AM
23   GOING TO GO BACK TO OUR COUNTRY, AND WE MAY NEVER SEE EACH
24   OTHER AGAIN.
25             THOSE ARE THE KIND OF DECISIONS.  AND THEY ALSO NEED

1    COUNSELING.

2           AS THE AFFIDAVITS SAY, IT WAS SO DIFFICULT TO EVEN

3    TALK TO THE PARENTS.  THEY WERE CONSTANTLY BEING TRANSFERRED.

4    SO THE PARENTS DIDN'T GET A LOT OF INFORMATION ABOUT WHAT

5    THEIR CHOICES ARE.  I THINK, AS THE AFFIDAVITS SHOW, THEY JUST

6    HAD NO UNDERSTANDING OF THE PROCESS.  BUT AT THE END OF THE

7    DAY, NOT HAVING THAT TIME WITH YOUR CHILD TO MAKE THAT KIND OF

8    DECISION TO POTENTIALLY LEAVE YOUR CHILD -- I MEAN, THAT MAY

9    BE THE LAST TIME THEY SEE THIS CHILD.

10          **THE COURT:**  THEN GOING BACK TO THE FORM.  THIS CASE

11   ALSO HAS BEEN ABOUT ORDER AND PROCEDURE --

12          **MR. GELERNT:**  RIGHT.

13          **THE COURT:**  -- AND PROCESS.  AND CLEARLY THE

14   PLAINTIFFS HAVE MADE A SHOWING, BASED ON A LIKELIHOOD OF

15   SUCCESS, THAT THE GOVERNMENT GOT THAT ALL WRONG AT THE

16   BEGINNING.

17          **MR. GELERNT:**  RIGHT.

18          **THE COURT:**  THAT HAS BEEN RECTIFIED.  BUT HERE WE

19   HAVE A PROCESS IN PLACE, WITH CLASS NOTICE.  THERE WAS AN

20   ORDER AND PROCEDURE, AND ULTIMATELY PARENTS ARE HELD TO

21   ACCOUNT.  IT IS POSTED IN ENGLISH AND IN SPANISH.  THE NOTICE

22   IS CLEAR.

23          AND EVEN, IF THEY HAD QUESTIONS, IT INVITES THE

24   PARENT TO CALL YOU, ACLU.  DOESN'T GET ANY BETTER AS FAR AS

25   LEGAL REPRESENTATION.  IF THERE WERE ANY QUESTIONS THEY WERE

JULY 27, 2018

1  INVITED TO CALL YOU, ON THE FORM, WITHIN THIS 48-HOUR PERIOD

2  OF TIME.

3          **MR. GELERNT:**  YOUR HONOR, YOU KNOW, I THINK THAT I

4  WOULD HAVE TO GO BACK TO THE AFFIDAVITS.  THEY WEREN'T ALLOWED

5  TO ASK QUESTIONS OR IT WASN'T CLEAR THEY COULD ASK QUESTIONS.

6  SOME OF THEM WERE PRESENTED ONLY IN ENGLISH, SOME OF THEM WERE

7  INDIGENOUS SPEAKERS.

8          I THINK THE IDEA THAT THEY WERE GETTING THIS CLEARLY

9  FROM THE FORM -- SOMETIMES THEY WERE BROUGHT INTO A ROOM WITH

10  50 PEOPLE AND SAY, YOU HAVE THREE OR FOUR MINUTES TO

11  UNDERSTAND THIS FORM AND THEN SIGN IT.

12          SO I DO NOT THINK THAT THE FORM WORKED AS WE WOULD

13  HAVE HOPED.

14          EVEN PUTTING ASIDE THE QUESTION OF DO YOU NEED YOUR

15  CHILD THERE, I THINK IT WAS AN IMPOSSIBLE SITUATION FOR MANY

16  OF THESE FAMILIES FOR THE PARENTS.  AND IT IS CLEAR FROM THE

17  AFFIDAVITS WHAT HAPPENED.

18          AND, YOU KNOW, I TAKE YOUR POINT THAT THIS WAS ABOUT

19  REUNIFICATION, BUT I ALSO -- YOUR POINT HAS ALWAYS BEEN, WE

20  NEED TO REUNIFY AND PUT THEM BASICALLY BACK IN THE POSITION

21  THEY WOULD HAVE BEEN.

22          THEY WOULD NEVER HAVE BEEN IN THIS POSITION OF BEING

23  SO TRAUMATIZED, NOT HAVING HAD THE CHANCE TO TALK WITH THEIR

24  CHILD ABOUT THIS PROFOUND DECISION.

25          SO IF THEY HAD NEVER BEEN SEPARATED THEY WOULD HAVE

1   EASILY HAD SEVEN DAYS TO BE WITH THEIR CHILD, DISCUSSING, HERE

2   IS WHAT IS GOING TO HAPPEN.  THEY WOULD HAVE TALKED TO AN

3   ADVOCATE AND MADE THIS DECISION.

4           ALL WE ARE TRYING TO DO IS PUT IT BACK IN THAT

5   SITUATION.  AND WE DO NOT THINK IT IS UNREASONABLE, GIVEN THAT

6   THE GOVERNMENT HAS CREATED THIS PROBLEM, FOR THE GOVERNMENT TO

7   SAY, OKAY, LET'S GIVE THEM SOME TIME SO THE RIGHT DECISION IS

8   MADE.  BECAUSE THIS IS SUCH A PROFOUND DECISION THAT IS GOING

9   TO BE MADE.

10          **THE COURT:**  WOULDN'T IT BE MORE, THOUGH, THAN JUST

11  PUTTING THEM BACK TO THE STATUS QUO?  BECAUSE OBVIOUSLY

12  ENORMOUS RESOURCES HAVE BEEN SHEPHERDED AND PUT IN PLACE AND

13  THERE HAS BEEN A REUNIFICATION.

14          THIS WOULD THEN GIVE THE PARENTS ADDITIONAL TIME TO

15  MAKE THE DECISION THEY MADE EARLIER IN THE PROCESS, AND

16  ARGUABLY TO CHANGE THE STATUS QUO BY RE-SEPARATING SO THAT

17  THEY COULD EFFECT A LEGAL CHANGE THAT MAY ARGUABLY GIVE THE

18  CHILD MORE ASYLUM RIGHTS AS AN UNACCOMPANIED MINOR.  BUT THEY

19  ARE MAKING THAT CHANGE WHEN THEY, IF YOU GO TO THE STATUS QUO,

20  THEY WOULD NOT HAVE HAD THAT OPPORTUNITY.  THE CHILDREN WOULD

21  HAVE BEEN ACCOMPANIED.

22          **MR. GELERNT:**  BUT IF THE CHILD WAS ACCOMPANIED THEY

23  WOULD HAVE HAD THE CHOICE TO HAVE ONE ASYLUM PROCEEDING

24  TOGETHER OR SEPARATE PROCEEDINGS.  THAT WOULD HAVE ABSOLUTELY

25  BEEN A CHOICE FOR THEM.

JULY 27, 2018

1          AND I THINK THAT IS ONE OF THE THINGS THAT THE

2   ADVOCATES ON THE GROUND ARE SAYING IS WHEN A FAMILY COMES

3   TOGETHER THEY ARE ASKED, DO YOU WANT ONE ASYLUM PROCEEDING AND

4   SINK OR SWIM TOGETHER?  DO YOU WANT YOUR CHILD TO HAVE A

5   SEPARATE PROCEEDING?

6          AND NOTABLY, IF THE PARENT FAILED THEIR PROCEEDING

7   BUT THE CHILD PASSED, THE LONG-TERM PRACTICE WAS ALWAYS TO

8   HAVE THE PARENT STAY AND BOTH THE CHILD AND PARENT WOULD BE

9   PUT IN FULL IMMIGRATION PROCEEDINGS?

10          SO WE ARE REALLY TAKING A STEP BACKWARD NOW LOOKING

11   TO REMOVED PARENTS BECAUSE THEIR CHILD CAN STAY AND PURSUE

12   ASYLUM.  IN THE PAST THAT WOULD NEVER HAVE HAPPENED.  IF THE

13   CHILD PASSED HIS CREDIBLE FEAR INTERVIEW, THE PARENT WOULD

14   HAVE COME ALONG.  THAT WAS THE PRACTICE.  IT WAS UNDERSTOOD

15   THAT THAT WAS THE BETTER WAY TO DO IT.

16          SO I THINK WE ARE REALLY GOING TO BE PUTTING THESE

17   FAMILIES IN A SITUATION THEY WOULD HAVE NEVER BEEN IN, BECAUSE

18   THEY WOULD HAVE HAD THAT CHOICE.

19          **THE COURT:**  UNDER THE OLD SYSTEM, THEN, IF THE CHILD

20   WAS ALLOWED TO STAY BASED ON A SUCCESSFUL ASYLUM CLAIM, THEN

21   THE PARENT WOULD BE SEPARATED AT THAT TIME?

22          **MR. GELERNT:**  YOU MEAN IF THEY WERE IN FULL

23   IMMIGRATION PROCEEDINGS?

24          **THE COURT:**  YES.

25          **MR. GELERNT:**  AND AT THE END OF THOSE PROCEEDINGS?

JULY 27, 2018

1    I THINK THAT IS PROBABLY RIGHT.  I DON'T KNOW HOW OFTEN THE

2    GOVERNMENT DEPORTS THE PARENT WITH THE CHILD STILL HERE.  BUT

3    THEY CERTAINLY WOULD HAVE BOTH GOT INTO FULL PROCEEDINGS.

4         AND THAT IS ALL THAT IS GOING ON HERE IS THAT THEY

5    ARE AT THAT STAGE WHETHER THEY ARE EVEN GOING TO GET INTO FULL

6    PROCEEDINGS.

7         **THE COURT:**  ALL RIGHT.  THEN GOING BACK TO THE

8    PRACTICAL REALITIES.  EVERYONE HAS BEEN REUNIFIED NOW OF THE

9    ELIGIBLE GROUP.  SO WITH EACH DAY PASSING, SOME OF THESE

10   REUNIFICATIONS OCCURRED TEN DAYS AGO, NINE, EIGHT, SEVEN.

11   HUNDREDS HAVE BEEN COMING IN.

12        I GO BACK TO THE ORIGINAL QUESTION:  HAVEN'T THE

13   VAST MAJORITY, THEY HAVE HAD THIS TIME?  I AM ASSUMING BECAUSE

14   EVERYONE KNEW THIS WAS COMING, THIS HEARING, THAT THE

15   IMMIGRATION ATTORNEYS THAT YOU WORK WITH AND COMMUNICATE WITH

16   HAVE BEEN ON THE GROUND ADVISING.

17        **MR. GELERNT:**  RIGHT.  SO, YOUR HONOR, THAT IS A

18   FAIR POINT.  SO I JUST WANT TO BE AS CLEAR AS I CAN ABOUT

19   THAT.

20        WE STILL HAVE NOT GOT THE LIST OF WHO HAS BEEN

21   REUNIFIED AND WHERE THEY WENT.

22        WE BELIEVE THAT THE VAST MAJORITY OF THOSE THAT YOU

23   ARE TALKING ABOUT, A WEEK AGO, TEN DAYS AGO, WERE RELEASED,

24   THAT THE ONES WHO ARE COMING NOW ARE DETAINED, SO IT IS VERY

25   RECENT.

JULY 27, 2018

1       BUT CERTAINLY, YOUR HONOR, IF YOU WANT TO SAY THE

2  SEVEN DAYS, DURING THE INTERIM STAY IF YOU WERE GETTING

3  COUNSELING YOU HAVE HAD YOUR SEVEN DAYS, THAT IS FAIR, YOUR

4  HONOR.

5       SO ALL WE ARE SAYING IS, WE WOULD LIKE TO KNOW -- WE

6  HAVE BEEN ASKING FOR THIS -- WHO HAS BEEN REUNIFIED AND PUT

7  INTO DETENTION SO WE CAN FIGURE IT OUT.

8       WE ARE SLOWLY TRYING TO FIGURE IT OUT ON THE GROUND

9  AS THE PEOPLE ON THE GROUND GET WORD FROM OTHER DETAINEES OR

10 SOMEONE, WE HAVE MET WITH THIS FAMILY.

11      WE ARE HAPPY TO PROVIDE YOU WITH A LIST OF, THESE

12 ARE THE FAMILIES WE HAVE BEEN ABLE TO MEET WITH AND WHAT DAY

13 WE STARTED MEETING WITH THEM.  BUT AT THIS POINT WE DON'T EVEN

14 KNOW.

15      AND WE CERTAINLY DON'T KNOW THE FAMILIES THAT WERE

16 BROUGHT THERE YESTERDAY, WHETHER THEY EVEN MADE CONTACT WITH

17 ANYBODY.  SO FOR AT LEAST FOR THOSE PEOPLE, YOU KNOW, WE

18 BELIEVE THE SEVEN DAYS.  BUT IF THERE IS SOMEONE WHO HAS BEEN

19 GETTING COUNSELING FOR THREE DAYS, THEN MAYBE THEY HAVE FOUR

20 DAYS LEFT.  IF THERE WAS SOMEONE SEVEN DAYS AGO --

21      I THINK IT WOULD HAVE -- THE ONLY THING I WOULD ADD

22 ABOUT THAT IS IT WOULD HAVE TO BE FROM WHEN SOMEONE GOT NOTICE

23 THE FAMILY WAS EVEN THERE.  BECAUSE WHAT HAPPENS IS THE

24 GOVERNMENT BRINGS THEM TO THE DETENTION CENTER, BUT DOESN'T

25 ALERT PEOPLE, HEY, THERE IS A REUNIFIED FAMILY FROM MS. L.

JULY 27, 2018

1    HERE NOW.

2         THEY KNOW WHO THE COUNSELORS ARE BECAUSE THEY HAVE

3    BEEN WORKING WITH THEM FOR YEARS.  THEY COULD HAVE BEEN

4    SAYING, HEY, WE ARE BRINGING A REUNIFIED MS. L. FAMILY, THEY

5    ARE IN WING W IN THE BACK.

6         THAT HASN'T GONE ON.

7         SO ALL WE ARE ASKING IS ONCE WE GET NOTICE OF THAT

8    WE CERTAINLY CAN GO BACK IN THE DAYS AND SEE.  AND THAT SEEMS

9    FAIR, YOUR HONOR, TO SAY THAT WE DON'T GET A WINDFALL FROM THE

10   INTERIM STAY.

11        **THE COURT:**  IT APPEARS, ALSO, THE VAST MAJORITY OF

12   THESE REUNIFICATIONS ARE FAMILIES THAT ARE BEING PAROLED.

13        **MR. GELERNT:**  RIGHT, YOUR HONOR.

14        **THE COURT:**  THEY ARE OUT AND THEY ARE EASILY

15   ACCESSIBLE.  YOU KNOW WHERE THEY ARE.

16        **MR. GELERNT:**  THAT IS ABSOLUTELY RIGHT, YOUR HONOR.

17   WE ARE TALKING ABOUT THE ONES WHO ARE IN DETENTION AND MAY BE

18   REMOVED IMMEDIATELY.  I THINK THOSE ARE THE INDIVIDUALS THAT

19   WE ARE CONCERNED WITH.

20        **THE COURT:**  WHAT I AM -- THIS PROCESS, IT HAS BEEN

21   TEN DAYS IN PLACE NOW AND IT IS ALL PENDING THE BRIEFING ON A

22   SCHEDULE THAT THE PARTIES REQUESTED.  AND THE FIRST ISSUE IS

23   WHETHER OR NOT THE COURT HAS JURISDICTION TO EVEN STEP IN AND

24   DO SOMETHING AS SIGNIFICANT AS INTERVENING AND PRECLUDING THE

25   EXECUTIVE BRANCH FROM ENFORCING A REMOVAL ORDER, SO THAT ISSUE

1    IS SQUARELY PRESENTED NOW.

2           AND WHAT I AM LOOKING TO IS NOT ONLY WHETHER THE

3    COURT HAS JURISDICTION TO DO THAT, BUT IF IT DOES WHETHER THAT

4    TYPE OF EXTRAORDINARY RELIEF IS WARRANTED UNDER THESE UNIQUE

5    FACTS.

6           I THINK I HAVE GOT THE INFORMATION.  WHAT I WANT TO

7    DO IS TAKE IT UNDER ADVISEMENT AND ISSUE AN ORDER AS SOON AS I

8    AM ABLE TO.

9           MR. STEWART, DO YOU HAVE ANY ADDITIONAL INFORMATION

10   OR ARGUMENT ON THIS PARTICULAR ISSUE?

11           **MR. STEWART:**  SURE, YOUR HONOR.  I WILL TRY TO BE

12   REASONABLY CONCISE.

13           YOUR HONOR, AS YOU KNOW, I HAD THE HONOR OF

14   APPEARING HERE A GOOD NUMBER OF TIMES BEFORE YOUR HONOR NOW,

15   AND I THINK YOUR HONOR HAS CONSISTENTLY EMPHASIZED A NUMBER OF

16   THINGS.  ONE IS THAT YOUR HONOR'S ORDERS LAY OUT CLEARLY THE

17   RULES OF PROCEEDING AND HOW REUNIFICATIONS ARE GOING TO GO.

18   THE NOTICE, AND THAT SORT OF THING.  AND THE PARTIES SHOULD

19   STICK TO THOSE AND HONOR THOSE, AND ACT IN KEEPING WITH THOSE.

20           SECOND, YOUR HONOR HAS BEEN QUITE CLEAR THAT THE

21   RIGHT AT ISSUE HERE IS A DUE PROCESS RIGHT TO FAMILY UNITY,

22   FAMILY INTEGRITY, AND THEREFORE REUNIFICATION.

23           AND THIRD, YOUR HONOR HAS EMPHASIZED THE IMPORTANCE

24   OF THE UTMOST GOOD FAITH BETWEEN THE PARTIES.

25           IN KEEPING WITH ALL THREE OF THOSE, THOSE SORT OF

JULY 27, 2018

```
 1   GUIDEPOSTS, I WOULD SAY, YOUR HONOR, THE GOVERNMENT TRIED VERY

 2   HARD IN GOOD FAITH TO FIND A SOLUTION HERE THAT WOULD

 3   ACCOMMODATE THE CONCERNS THAT THE PLAINTIFFS HAVE EMPHASIZED.

 4          WE DID SO EVEN THOUGH, AS YOUR HONOR HAS JUST

 5   MENTIONED, WE HAVE A JURISDICTIONAL OBJECTION, A VERY STRONG

 6   JURISDICTIONAL OBJECTION THAT IS QUITE IMPORTANT AND GOES TO

 7   THE HEART OF THE EXECUTIVE BRANCH'S DISCRETIONARY AUTHORITY.

 8   NONETHELESS, WE PROPOSED A PATH THAT WOULD HAVE ADDRESSED JUST

 9   THE MANY CONCERNS THAT ARE BEING IDENTIFIED.  WE LAID IT OUT

10   IN THE PAPERS SO I WON'T BELABOR IT.

11          BUT ONE OF THE POINTS IS THAT WE PROPOSED THE KARNES

12   FACILITY TO BE DEDICATED EXCLUSIVELY TO THIS TO WORK SO THAT

13   ATTORNEY ACCESS COULD BE PROVIDED IN FULL.  THE ADVOCATES

14   WOULD KNOW WHERE TO GO, THEY WOULD HAVE TIME TO WORK WITH

15   PEOPLE.

16          AGAIN, YOU KNOW, THIS IS NOT SOMETHING THAT WE

17   BELIEVE THE LAW REQUIRES US TO DO OR THAT WE CAN BE PROPERLY

18   ORDERED TO DO; BUT WE DID IT BECAUSE, YOU KNOW, WE ARE

19   COMMITTED TO TRYING TO FIND SOLUTIONS HERE AND NOT PUT THE

20   COURT IN A SPOT OF ISSUING NEEDLESS INJUNCTIVE RELIEF.  SO I

21   WOULD EMPHASIZE THAT.

22          I WOULD ALSO EMPHASIZE, YOUR HONOR, TWO OR THREE

23   MORE QUICK POINTS.  ONE IS, AS YOUR HONOR RECOGNIZED TODAY AND

24   AT THE PREVIOUS HEARING, MANY OF THESE CHILDREN HAVE HAD SEVEN

25   DAYS OR MORE AT THIS POINT AMONG THE POTENTIALLY ELIGIBLE
```

JULY 27, 2018

1    FOLKS.

2           THEY WILL, YOU KNOW, BY, YOU KNOW, SEVEN DAYS FROM

3    YESTERDAY OR SEVEN DAYS FROM REUNIFICATION WILL HAVE HAD THAT

4    FULL COMPLEMENT OF SEVEN DAYS.  SO ANY SORT OF STAY WOULD HAVE

5    TO BE HIGHLY TAILORED AND LIMITED.  AGAIN, YOU KNOW, ONE IS

6    NOT APPROPRIATE IN OUR VIEW, BUT WE EMPHASIZE THAT.

7           THE NEXT POINT, YOUR HONOR, YOU MENTIONED ABOUT THE

8    STATUS QUO, THE EFFORT TO REUNIFY FAMILIES.  THIS GOES BACK

9    YOUR HONOR'S HOLDING AND THEME THAT THE RIGHT AT ISSUE HERE

10   THAT YOUR HONOR FOUND IS ONE TO FAMILY INTEGRITY THAT REQUIRES

11   REUNIFICATION OF FAMILIES.

12          AND IT IS QUITE STRANGE HERE, I THINK, THAT THAT

13   RIGHT TO FAMILY UNITY IS BEING TRANSFORMED SUDDENLY INTO AN

14   ALLEGED FUNDAMENTAL RIGHT TO RE-SEPARATE OR TO LEVERAGE MORE

15   PROCEDURES THAN YOUR HONOR HAS ALREADY LAID OUT.  MORE RIGHTS,

16   THAT SORT OF THING.  AND IT IS INCONSISTENT WITH WHAT THIS

17   CASE HAS BEEN ABOUT WITH, YOU KNOW, THE EFFORTS THAT WE HAVE

18   BEEN TRYING TO DO TO HONOR YOUR HONOR'S ORDERS.  AND IT IS

19   INCONSISTENT WITH THE PURPOSE OF A PRELIMINARY INJUNCTION,

20   WHICH IS HERE TO RESTORE THE STATUS QUO.

21          FINALLY, I JUST EMPHASIZE, YOUR HONOR, THAT YOUR

22   HONOR DID WELL, I THINK, TO HIT THIS BEFORE I WAS ABLE TO.

23   BUT JUST ON THE FORM, THE NOTICE FORM, YOU KNOW, IT IS QUITE

24   CLEAR.  IT GIVES PARENTS THE INFORMATION THEY NEED TO KNOW.

25          THESE -- YOU KNOW, AS WITH ANY SYSTEM THERE COULD BE

JULY 27, 2018

```
 1   IMPERFECTIONS OF OPERATION ON THE GROUND.  YOU KNOW, IT WOULD

 2   HAVE BEEN NICE IF THOSE HAD BEEN BROUGHT TO OUR ATTENTION, YOU

 3   KNOW, UNIFORMLY FOR RESOLUTION RATHER THAN THROUGH AFFIDAVITS

 4   ATTACHED TO A REPLY BRIEF.

 5            BUT I DON'T THINK THAT -- YOU KNOW, WE HAVE

 6   IMPLEMENTED AND DONE OUR VERY BEST TO IMPLEMENT A SYSTEM THAT

 7   THE COURT ORDERED, THAT THE PLAINTIFFS PROPOSED TO THE COURT,

 8   AND HAVE GIVEN THE FULL OPPORTUNITY TO MAKE THE DECISION THAT

 9   MR. GELERNT IDENTIFIES AS CRITICAL.

10            SO I WOULD EMPHASIZE THOSE POINTS, YOUR HONOR, THAT

11   FURTHER RELIEF IS NOT WARRANTED.  THE GOVERNMENT TRIED VERY

12   HARD, CONSISTENT WITH YOUR HONOR'S GUIDEPOSTS, TO GET THIS

13   RIGHT.

14            MANY FOLKS HAVE ALREADY HAD THE FULL RELIEF THAT MR.

15   GELERNT HAS ASKED FOR, AND ANY FURTHER RELIEF WOULD EXPIRE

16   REALLY QUITE PROMPTLY.

17            AND I THINK WITH THOSE POINTS, I WOULD OTHERWISE BE

18   CONTENT TO REST ON THE BRIEFS, YOUR HONOR.

19   THE COURT:  DO YOU AGREE THAT WITH THE PARENTS WHO

20   CLAIM THEY ELECTED TO REMOVE SEPARATELY BUT DIDN'T KNOW WHAT

21   THEY WERE DOING COULD BE CARVED OUT, OR WHATEVER THE TERM IS,

22   SO THAT THEY CAN MEET WITH COUNSEL, AND THEN DETERMINE WHETHER

23   TO REUNIFY AND REMOVE TOGETHER?  THAT DOESN'T CALL INTO

24   QUESTION THE BIG ISSUE OF WHETHER THE COURT CAN ISSUE AN

25   INJUNCTION PRECLUDING ENFORCEMENT OF A REMOVAL ORDER.
```

JULY 27, 2018

1         **MR. STEWART:**  RIGHT, YOUR HONOR.  I WOULD LIKE TO

2   TAKE THAT BACK.  BUT IF WE COULD GET INFORMATION OF, LIKE,

3   LOOK, HERE IS WHAT HAPPENED, IT WOULD BE HELPFUL.

4         BECAUSE, YOU KNOW, AS I READ THE DECLARATIONS, THEY

5   ARE A LITTLE BIT UNCLEAR AS TO WHAT HAPPENED.  I MEAN, SOME

6   SAY, YOU KNOW, I WANT TO BE REUNIFIED, BUT THEY DON'T GO INTO

7   CLARITY ABOUT WHAT THE OPTIONS ARE AVAILABLE.

8         I MEAN, SOME PEOPLE SAY, I WANT TO BE REUNIFIED AND

9   REMAIN IN THE UNITED STATES, BUT THAT IS NOT A LEGALLY

10  AVAILABLE OPTION FOR SOMEBODY WHO HAS BEEN REMOVED.

11        SO I THINK THERE NEEDS TO BE A LITTLE BIT OF CLARITY

12  THERE, AND IT IS HARD FOR ME TO GIVE A BLANKET ANSWER.

13        I COULD TAKE IT BACK.  IT WOULD BE HELPFUL TO

14  KNOW -- I MEAN, AGAIN, YOU KNOW, WE WERE HIT WITH KIND OF

15  ANECDOTAL REPORTS IN THE DECLARATIONS, AND IT IS JUST HARD TO

16  KNOW WHAT IS ALLEGEDLY GOING ON WITHOUT A LITTLE BIT MORE

17  DETAIL SINCE WE --

18        **THE COURT:**  WHEN YOU SAY YOU COULD TAKE IT BACK,

19  WHAT DOES THAT MEAN?

20        **MR. STEWART:**  WELL, I WOULD HAVE TO TALK TO THE --

21  JUST THE CLIENTS AND SORT OF SEE, YOU KNOW, WHAT THE, YOU

22  KNOW, HOW WE, YOU KNOW, WHAT WE CAN KIND OF WORK OUT, WHAT WE

23  MIGHT BE ABLE TO WORK OUT THERE AS TO THAT GROUP.

24        I MEAN, WHAT I DO UNDERSTAND IS THAT, LOOK, IF

25  SOMEBODY ELECTS ONE THING AND CHANGES THEIR MIND, YOU KNOW,

1   THERE BE AN EFFORT TO, YOU KNOW, IN THE NORMAL COURSE TO JUST

2   ACCOMMODATE THAT.  YOU KNOW, I MEAN, THAT THE CHOICE THAT

3   SOMEBODY MAKES IS THE CHOICE THEY MAKE AND, YOU KNOW, THAT

4   WOULD BE THE HOPE TO HONOR THAT.

5            **THE COURT:**  THAT IS A DIFFERENT ISSUE.  IF YOU

6   ACCEPT THE PLAINTIFFS' ARGUMENT IT GOES TO A PARENT WHO MADE A

7   DECISION TO SEPARATE MISTAKENLY.  THEY CLAIM THE CIRCUMSTANCES

8   WERE SUCH THAT THEY DIDN'T HAVE ADEQUATE NOTICE OR

9   INFORMATION.  THEY ELECTED TO BE REMOVED SEPARATELY.

10           AND, THE ARGUMENT GOES, IF THEY HAD ALL OF THE

11  INFORMATION THEY WOULD, CONSISTENT WITH THIS WHOLE CASE, WANT

12  TO REUNIFY, BE WITH THEIR CHILD AND THEN REMOVED TOGETHER.

13           SO IT IS DIFFERENT FROM THE LARGER GROUP WHERE THE

14  ARGUMENT REALLY IS, WE HAVE REUNIFIED AND NOW WE WOULD LIKE

15  MORE TIME TO REEVALUATE WHETHER WE WANT TO RE-SEPARATE.

16           **MR. STEWART:**  AND JUST TO MAKE SURE I GET THE

17  QUESTION, YOUR HONOR, RIGHT, IS YOUR HONOR PROPOSING JUST

18  FURTHER TIME FOR THAT GROUP OR -- I GUESS I AM JUST TRYING TO

19  UNDERSTAND WHAT I CAN DO TO BE RESPONSIVE.

20           **THE COURT:**  WELL, IT JUST SEEMS TO ME THAT AS TO THE

21  FORMER GROUP, THOSE THAT ARE CLAIMING THEY ELECTED TO REMOVE

22  SEPARATELY IN ERROR, THAT SOMETHING CAN BE DONE WITH THEM

23  SHORT OF AN INJUNCTION PRECLUDING ENFORCEMENT OF A REMOVAL

24  ORDER WHERE THEY HAVE -- WHERE THEY ARE IDENTIFIED, AND THEY

25  MAKE, FROM THEIR PERSPECTIVE, AN INFORMED DECISION WHETHER TO

1 REMAIN SEPARATE AND BE REMOVED, OR TO REUNIFY AND REMOVE -- OR

2 REUNIFY AND REMOVE TOGETHER.

3          WHEN I READ THE DECLARATIONS, THAT WAS A VERY

4 IMPORTANT GROUP TO THE PLAINTIFFS, AND FOR UNDERSTANDABLE

5 REASONS, A PARENT REGRETTING THE DECISION TO BE REMOVED

6 SEPARATELY.  AND IT SEEMED TO BE A VERY SMALL NUMBER.

7          WE CAN LEAVE IT AT THAT.

8          I WANT TO TAKE THIS UNDER SUBMISSION.  IT MAY BE

9 SOMETHING THAT THE PARTIES CAN WORK THROUGH IN THE NEXT DAY OR

10 TWO, OR NOT.

11          **MR. STEWART:**  I WOULD LIKE TO KNOW WHAT -- YOUR

12 HONOR SUGGESTED IT WAS A SMALL NUMBER.  I AM CURIOUS -- MY

13 SENSE OF THE PLAINTIFFS IS -- IF THEY SAY, YOU KNOW, IT IS A

14 COUPLE DOZEN PEOPLE THAT IS ONE THING, BUT MY CONCERN IS THAT

15 THEY ARE GOING TO SUGGEST THAT IT IS A SMALL NUMBER AND THEN

16 SAY, OH, BUT WE STILL NEED A SIGNIFICANT TIME TO TALK TO EVERY

17 SINGLE PERSON TO MAKE SURE IT WAS NOT -- THEY WERE NOT, YOU

18 KNOW, MISLED.

19          THAT IS REALLY THE CONCERN HERE BECAUSE WE THOUGHT

20 WE WERE DEALING WITH ONE THING, AND EACH TIME, YOU KNOW, AND

21 NOW IT IS, YOU KNOW, THERE ARE SUGGESTIONS THAT IT IS HARD TO

22 FIT ALL OF THAT IN.

23          **MR. GELERNT:**  YOUR HONOR, ON THAT POINT, I THOUGHT

24 THE GOVERNMENT IS REPRESENTING NOW THAT OF THE PEOPLE THAT

25 RELINQUISHED THEIR RIGHT TO BE WITH THEIR CHILD IT IS ONLY

1  ABOUT 100, RIGHT?

2          **THE COURT:**  120.

3          **MR. GELERNT:**  ONE QUESTION I WAS GOING TO ASK THE

4  GOVERNMENT IS, IT WENT FROM 206 TO 120.  WE ARE NOT SURE HOW

5  THAT WAS, WHY.

6          **THE COURT:**  YES.

7          DO YOU HAVE AN ANSWER, MR. STEWART?

8          **MR. STEWART:**  I DON'T HAVE THAT ANSWER RIGHT IN

9  FRONT OF ME.  I WILL LOOK AT THAT, YOUR HONOR.

10         **MR. GELERNT:**  SO, THEN, WHETHER IT IS 206 OR 120,

11 YES, WE WOULD LIKE -- I AM NOT SURE EXACTLY I UNDERSTAND WHAT

12 THE UNITED STATES GOVERNMENT'S LEGITIMATE POSITION IS IN

13 LEAVING A CHILD BEHIND WHO THE PARENT DOESN'T WANT TO LEAVE

14 BEHIND.  THAT SEEMS BEYOND THE PALE.

15         **MR. STEWART:**  MY LEGITIMATE POSITION THERE, YOUR

16 HONOR, IS THAT IT IS ONE THING IF A PERSON HERE OR THERE SAYS

17 THEY DIDN'T UNDERSTAND SOMETHING.  YOU KNOW, LIKE, I ASKED FOR

18 A TRANSLATOR, THE TRANSLATOR JUST SPOKE IN A LANGUAGE I DIDN'T

19 UNDERSTAND, YOU KNOW, LIKE, IF THAT'S THE CLAIM FOR ONE.

20         BUT MY UNDERSTANDING OF MR. GELERNT IS THAT HIS

21 ESSENTIAL VIEW IS THAT IF YOU ELECTED TO BE REMOVED WITHOUT

22 YOUR CHILD, THEN THAT SOMEHOW, LIKE, PRESUMPTIVELY IMPLIES

23 COERCION OR MISLEADING OR INADEQUATE INFORMATION OR LACK OF

24 COUNSELING.

25         **MR. GELERNT:**  WHY DOES THE U.S. GOVERNMENT WANT TO

JULY 27, 2018

```
 1   TAKE CONTROL OF THESE CHILDREN?

 2              THE COURT:  I UNDERSTAND --

 3              MR. GELERNT:  I AM SORRY.

 4              THE COURT:  I AM GOING TO TAKE THIS ISSUE UNDER

 5   SUBMISSION, AND THEN MAKE A COUPLE COMMENTS AS TO HOW WE WILL

 6   PROCEED IN THE FUTURE.  AND THEN WE CAN CLOSE THE HEARING.

 7              I WILL ISSUE AN ORDER SETTING OUT ADDITIONAL

 8   INFORMATION THAT I BELIEVE PLAINTIFFS ARE ENTITLED TO.

 9              THE FOCUS HAS TO BE ON THE PARENTS WHO WERE REMOVED

10   WITHOUT CHILDREN, AND THE UP TO 52 PARENTS WHO MAY BE IN THE

11   INTERIOR AND THE GOVERNMENT HAS THE CHILDREN BUT DOESN'T KNOW

12   WHERE THE PARENT IS.

13              THAT'S THE MOST PRESSING GROUP.  AND ALL EFFORTS

14   HAVE TO BE MADE TO IDENTIFY AND LOCATE THOSE PARENTS AND THEN

15   TO REUNIFY AS QUICKLY AS POSSIBLE.

16              SO IT IS MY INTENTION TO ISSUE AN ORDER SETTING OUT

17   THE INFORMATION THAT THE GOVERNMENT WOULD HAVE TO PROVIDE TO

18   PLAINTIFFS.  AND THEN THE TWO PARTIES CAN WORK AND DEVOTE

19   ENORMOUS RESOURCES TO LOCATING THE PARENTS AND THEN MAKING

20   THAT REUNIFICATION HAPPEN.  SO THE STAGE WE WILL MOVE INTO

21   NEXT, THAT'S OBVIOUSLY THE MOST PRESSING STAGE.

22              ON THE REUNIFICATION OF ELIGIBLE PARENTS, THAT

23   PROCESS HAS BEEN COMPLETED.  AND THE GOVERNMENT DESERVES GREAT

24   CREDIT IN THAT REGARD.  THERE WERE 1,820 CHILDREN IN THAT

25   GROUP, AND THEY HAVE BEEN REUNIFIED.  AND THEY HAVE BEEN
```

JULY 27, 2018

1    REUNIFIED ON TIME, BY THE DEADLINE.  AND I WOULD SIMPLY
2    REITERATE WHAT I SAID AT THE LAST HEARING, THAT COMMANDER
3    WHITE DESERVES ENORMOUS RECOGNITION FOR PUTTING IN PROCESS --
4    OR PUTTING IN PLACE A PROCESS THAT WORKED AND ACCOMPLISHED
5    THAT IMPORTANT ASPECT OF REUNIFICATION.
6         THE GOVERNMENT CAN ONLY REUNIFY FAMILIES OVER WHICH
7    IT HAS CONTROL, AND IT HAS CONTROL OVER THE FAMILIES, THE
8    PARENTS AND CHILDREN, IN ITS CUSTODY.
9         THE GOVERNMENT IS AT FAULT FOR LOSING SEVERAL
10   HUNDRED PARENTS IN THE PROCESS, AND THAT'S WHERE WE GO NEXT IS
11   IDENTIFYING AND FINDING THOSE PARENTS WHO HAVE BEEN REMOVED
12   WITHOUT CHILDREN OR WHO ARE IN THE INTERIOR AND NOT PRESENTLY
13   LOCATED SO THAT THEY CAN BE REUNIFIED WITH THEIR CHILDREN AS
14   QUICKLY AS POSSIBLE.  SO THAT'S THE SECOND STAGE THAT WE WILL
15   MOVE INTO.
16        I WILL ADDRESS THE REQUEST FOR THE TEMPORARY
17   RESTRAINING ORDER PROBABLY SOMETIME THIS WEEKEND.  I WANTED TO
18   GET COUNSEL'S POSITIONS HERE TODAY, AND THEN I WILL ISSUE AN
19   ORDER IN THE VERY NEAR FUTURE ON THAT ISSUE.
20        I THINK, AS MUCH AS I HAVE ENJOYED MEETING AND BEING
21   WITH COUNSEL IN PERSON, I DON'T THINK WE NEED TO DO THIS
22   ANYMORE.  I THINK A LOT CAN BE DONE REMOTELY.
23        WHAT I WAS CONTEMPLATING IS HAVING STATUS REPORTS BY
24   THURSDAY AT 3:00, AND THEN A TELEPHONIC CONFERENCE AT 1:00
25   EVERY FRIDAY UNTIL WE WORK THROUGH THIS VERY IMPORTANT GROUP

JULY 27, 2018

```
1    OF SEVERAL HUNDRED PARENTS WHO ARE MISSING, AND THEN WORK

2    THROUGH THE BALANCE OF ANY REMAINING ISSUES.

3            THERE IS ALSO GOING TO BE ISSUES WITH PARENTS THAT

4    THE GOVERNMENT HAS DEEMED INELIGIBLE AND THE PLAINTIFFS

5    DISAGREE.  AND THOSE CAN BE TEED UP AND ADDRESSED ON A ROLLING

6    BASIS.

7            ALSO WHAT IS IMPORTANT COMING DOWN THE ROAD, I THINK

8    THIS WOULD BE STAGE THREE, IS THIS PROBLEM CANNOT REPEAT.  AND

9    THE ONLY WAY TO AVOID ITS REPETITION IS TO SET IN PLACE A

10   PROTOCOL OR A PROCEDURE WHERE THE THREE AGENCIES COMMUNICATE.

11           IT IS APPARENT NOW -- AND THAT MAY ALREADY BE

12   RESOLVED.  BUT BEFORE THIS CASE WAS FILED THE REALITY IS THERE

13   WERE THREE AGENCIES, AND EACH WAS LIKE ITS OWN STOVEPIPE.

14   EACH HAD IT ITS OWN BOSS, AND THEY DID NOT COMMUNICATE.  SO

15   HHS WAS ONE STOVEPIPE; AND THEN DHS, WHICH INCLUDED ICE AND

16   CBP, WAS ANOTHER CHANNEL; AND THEN B.O.P., THROUGH DOJ, WAS

17   ANOTHER STOVEPIPE, BY ANALOGY.  AND THEY DIDN'T COMMUNICATE,

18   SO WHAT WAS LOST IN THE PROCESS WAS THE FAMILY.  THE PARENTS

19   DIDN'T KNOW WHERE THE CHILDREN WERE, AND THE CHILDREN DIDN'T

20   KNOW WHERE THE PARENTS WERE.  AND THE GOVERNMENT DIDN'T KNOW,

21   EITHER.

22           AND SO THERE HAS TO BE A STRUCTURE IN PLACE BECAUSE

23   FAMILY SEPARATION WILL CONTINUE FOR LEGITIMATE REASONS.  THERE

24   ARE GOING TO BE PEOPLE WHO KEEP COMING INTO THE COUNTRY, AND

25   THERE ARE GOING TO BE APPREHENSIONS.  AND THERE ARE GOING TO
```

JULY 27, 2018

```
1   BE PROSECUTIONS, AND THERE WILL BE NECESSARY SEPARATION.  BUT

2   THERE HAS TO BE A PROCESS IN PLACE WHERE, WHEN THE PARENT HAS

3   SERVED HIS OR HER TIME IN CRIMINAL CUSTODY AND THEY ARE TAKEN

4   BACK INTO CIVIL DETENTION, ICE, IMMIGRATION DETENTION, THAT

5   THAT INFORMATION IS KNOWN AND COMMUNICATED SO THAT HHS, WHICH

6   HAS THE CHILDREN, CAN THEN BEGIN REUNIFICATION.

7        SO THERE HAS TO BE A PROCEDURE OR PROTOCOL THAT IS

8   IN PLACE.  AND THERE HAS TO BE ONE PERSON IN CHARGE, LIKE

9   COMMANDER WHITE.  MAYBE HE IS THE PERSON.  THE GOVERNMENT CAN

10  IDENTIFY THAT PERSON, AND PUT THAT PROCESS IN PLACE.  AND THEN

11  THAT WOULD ENSURE, GOING FORWARD, THAT THIS ISSUE DOESN'T

12  REPEAT.

13       I THINK THAT IS VERY IMPORTANT, AND WE MAY BE A LONG

14  WAY TOWARD HAVING THAT COMPLETED.  NOW THAT THE GOVERNMENT HAS

15  SUCCESSFULLY REUNIFIED ALL OF THE ELIGIBLE CLASS MEMBERS THERE

16  MAY BE A SYSTEM IN PLACE WHERE THERE IS COMMUNICATION.  BUT

17  THAT'S AN IMPORTANT PART OF THIS CASE AND THIS PROCESS.  AND I

18  WOULD JUST FLAG THAT AS CATEGORY NUMBER THREE.

19       SO WE NEED TO NEXT MOVE TO THE VERY IMPORTANT TASK

20  OF REUNIFYING PARENTS WHO HAVE BEEN REMOVED WITHOUT CHILDREN,

21  AND THEN PARENTS IN THE INTERIOR WHO HAVEN'T PRESENTLY BEEN

22  LOCATED.

23       SO I THINK WE WILL CLOSE THE HEARING NOW.  I WILL

24  ISSUE TWO ORDERS.  ONE WILL BE THE SCHEDULING TYPE ORDER, THE

25  OTHER WILL BE THE ORDER ON THE REQUEST FOR TEMPORARY
```

JULY 27, 2018

```
1    RESTRAINING ORDER.

2             ARE THERE ANY OTHER MATTERS BEFORE WE RECESS?

3             MR. STEWART:  YOUR HONOR, MAY I REQUEST JUST AN

4    EXPEDITED TRANSCRIPT?  I KNOW SOME FOLKS WHO WANTED TO CALL IN

5    WOULD LOVE TO HEAR KIND OF THE FULL RUNDOWN.

6             THE COURT:  YES.  I AM SURE MS. PENCE CAN

7    ACCOMMODATE, SO WE WILL DO THAT.

8             AND THEN AGAIN, IT HAS BEEN A PLEASURE WORKING WITH

9    COUNSEL HERE IN PERSON.  ABSENT ANY REQUEST TO MEET AGAIN IN

10   PERSON WE WILL VISIT WEEKLY, ALBEIT TELEPHONICALLY.

11            THANK YOU.

12            MR. GELERNT:  THANK YOU, YOUR HONOR.

13

14                         *   *   *

15            I CERTIFY THAT THE FOREGOING IS A CORRECT
              TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
16            IN THE ABOVE-ENTITLED MATTER.

17            S/LEEANN PENCE                   7/27/2018
              LEEANN PENCE, OFFICIAL COURT REPORTER   DATE
18

19

20

21

22

23

24

25
```

JULY 27, 2018